No. 14-14-00785-CV

IN THE

FOURTEENTH COURT OF APPEALS

at Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
5/25/2015 6:46:14 AM
CHRISTOPHER A. PRINE
Clerk

_____

RICHARD ALAN HAASE,

Appellant,

V.

HYCHEM, Inc.;

Appellee.

_____

Appealed from the 240th District Court of
Fort Bend County, Texas

---

APPELLANT'S REPLY BRIEF - AMENDED

Richard Alan Haase,
4402 Ringrose Drive
Missouri City, Texas 77459
Tel. 281-261-9543
Richard.Haase@clearvalue.com

Pro Se' Appellant

APPELLANT DOES NOT REQUEST ORAL ARGUMENT

i

TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... ii

INDEX OF AUTHORITIES ............................................................................................... iii

Preliminary Statement ........................................................................................................ 1

ARGUMENT......................................................................................................................... 2

   I.  Fraud-Upon-the-Court ............................................................................................ 2
  II.  Laws of Supremacy and the Case ......................................................................... 4
 III.  Hychem is Liable ................................................................................................... 5
 IV.  Haase has Standing ............................................................................................... 7
  V.  Texas Has Jurisdiction to Non-exclusive/Non-preemptive Federal Claims......... 11
       A.  Genuine Material Facts Support of Each Element of Each Claim ..................... 12
       B.  Fraud is Evidenced.......................................................................................... 12
       C.  Conspiracy is well Evidenced ........................................................................ 14
       D.  Haase Has Valid Extortion/Exploitation/Slander Claims............................... 15
 VI.  Haase is Damaged ................................................................................................ 17

Summary and Conclusions ................................................................................................ 17

PRAYER ............................................................................................................................. 18

CERTIFICATE OF SERVICE........................................................................................... 19

APPENDIX ......................................................................................................................... 20

       APPENDIX 9 – TX Business and Commerce Code........................................... 21

## INDEX OF AUTHORITIES

### CASES

*Ableman v. Booth*, 62 U.S. 506 (1859)..............................................................................4

*ADM Invstor Services, Inc.*, *In re*, 304 S.W.3d 371, 374 (Tex. 2010) ...............................9

*Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 717
(Tex. App.—Houston [1st Dist.] 1988, writ denied)...................................................15

*Angelou v. African Overseas Union*, 33 S.W.3d 269, 278–79
(Tex. App.—Houston [14th Dist.] 2000, no pet.) ........................................................15

*Bulloch v. United States*, 763 F.2d 1115,1121 (10th Cir. 1985). ........................................3

*Builders Transport, Inc. v. Grice-Smith*, 167 S.W.3d 1, 12
(Tex. App.--Waco 2005, pet. denied)...........................................................................9

*Centeq Realty v. Siegler*, 899 S.W.2d at 195 (Tex. 1995) ................................................12

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)........................................................3

*Cherokee Water Co. v. Forderhause*, 727 S.W.2d 605, 612 (Tex. App.--Texarkana 1987) .. 8

*ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291 (2009)...........................2, 3

*ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1342
(Fed. Cir. 2012) .........................................................................................................2, 3

*ClearValue, Inc. v. Pearl River Polymers, Inc.*, (CAFC 12-1595) .................................2, 3

*ClearValue, Inc. and Richard Haase v. Pearl River Polymers, et al.*,
(US S Ct No. 12-212) ................................................................................................2, 3

*ClearValue, Inc. and Richard Haase v. Pearl River Polymers, et al.*,
(US S Ct No. 14-5045) ..................................................................................................2

*Cooper v. Aaron*, 358 U.S. 1 (1958)...................................................................................4

*Crim v. Handley*, 94 U.S. 652 (1876)...................................................................................3

*Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*,
755 F.2d 38, 43 (1988) .................................................................................................5

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 578–80
  (Tex. 2001) ................................................................................................. 13

*Expro Americas v. Sanguine Gas Exploration*, 351 S.W.3d 915, 921
  (Tex. App.--Houston [14th Dist.] 2011, pet. denied) .................................... 9, 10

*First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145
  (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.)................................................ 8

*Fuhrman v. Dretke*, 442 F.3d 893 (5th Cir. 2006) ........................................... 4

*Gibson v. Bostick Roofing and Sheet Metal*, 148 S.W.3d 482, 492
  (Tex. App.--El Paso 2004, no pet.)................................................................ 10

*Gittings, Neiman-Marcus, Inc. v. Estes*, 440 S.W.2d 90, 93
  (Tex. Civ. App.--Eastland 1969, no writ) ...................................................... 10

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) .................... 12

*Grubb v. Public Util. Comm'n*, 281 U.S. 470 (1930)......................................... 3

*Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)................................................ 3

*Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 629
  (Tex. App.—Fort Worth 2005, no pet.)......................................................... 13

*Hearn v. Hanlon-Buchanan, Inc.*, 179 S.W.2d 364, 367
  (Tex. Civ. App.--Fort Worth 1944, writ ref'd w.o.m.).................................. 8

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*
  341 S.W.3d 323, 337 (Tex. 2011) ................................................................. 12

*Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998) ............... 14

*Juul v. Fed. Express*, 260 F.3d 622 (5th Cir. 2001) ........................................ 3

*J.P., In re*, 296 S.W.3d 830, 836 (Tex. App.--Fort Worth 2009, no pet.) ......... 9

*K.A.S., In re,* 131 S.W.3d 215, 230–31 (Tex. App.-Fort Worth 2004, pet. denied) ........... 4

*Kithcart v. Metropolitan Life Ins. Co.*, 119 F.2d 497 (8th Cir. 1941). ............... 3

*Krainz v. Kodiak Resources, Inc.*, 436 S.W.3d 325, 331-333
  (Tex. App.--Austin 2013) ............................................................................. 10

*Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991) ........................................ 14

*L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir. 1995).............................. 3

*L.M.I.*, *In re*, 119 S.W.3d 707, 710–11 (Tex. 2003).................................................... 4

*Mills v. Warner Lambert Co.*, 157 S.W.3d 424,427 (Tex.2005)...................................... 11

*Natural Gas Pipeline Co.*, F.3d 1t 1406 ....................................................................... 4

*Nears v. Holiday Hospitality Franchising*, 295 S.W.3d 787, 795
(Tex. App.--Texarkana 2009, no pet.) ..................................................................... 9

*Neubaum v. Buck Glove Co.*, 302 S.W.3d 912, 916-917
(Tex. App.--Beaumont 2009, no pet.) ..................................................................... 9

*Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985) .......... 14

*Olmstead v. Napoli*, 383 S.W.3d 650, 652
(Tex. App.—Houston [14th Dist.] 2012, no pet.) ...................................................... 12

*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640 (Tex. 1995) ............................. 16

*Reliant Energy Servs. v. Cotton Valley*, 336 S.W.3d 764, 784
(Tex. App.--Houston [1st Dist.] 2011, no pet.) ........................................................ 9

*Richard Haase v. Pearl River Polymers, et al.*, No. 14-11-00024-cv, 2012 WL 4166826
(Tex. App.–Houston [14th Dist.] Aug. 9, 2012, pet. denied)...................................... 3, 4

*Richard Haase v. Pearl River Polymers, et al.*, TX SCt 12-0977.................................... 3

*Richard Haase v. Pearl River Polymers, et al.*, US SCt 13-5159 ................................... 3

*Sharpe v. Roman Catholic Diocese of Dallas*, 97 S.W.3d 791, 795
(Tex. App.-Dallas 2003, pet. denied) ....................................................................... 16

*Schaff v. Stripling*, 265 S.W.264, 266 (Tex. Civ. App.--Texarkana 1924, writ dism'd) .......... 8

*Somers ex rel. EGL, Inc. v. Crane*, 295 S.W.3d 5, 14-15
(Tex. App.--Houston [1st Dist.] 2009, pet. denied) .................................................. 10

*Sorenson v. Sutherland*, 109 F.2d 714 (2d Cir. 1940) .................................................. 3

*Subaru of America v. David McDavid Nissan*, 84 S.W.3d 212, 220 (Tex. 2002) ............ 11

*Sun Appliance & Elec., Inc. v. Klein*, 363 S.W.2d 293, 296
    (Tex. Civ. App.--Eastland 1962, no writ) ....................................................... 10

*Suzlon Energy v. Trinity Structural Towers*, 436 S.W.3d 835, 842
    (Tex. App.--Dallas 2014, no pet. h.)................................................................. 9

*Testa v. Katt*, 330 U.S. 386, 393, 67 S. Ct. 810 (1947) ..................................... 11

*Thomas Regional Directory v. Dragon Prods.*, 196 S.W.3d 424, 429
    (Tex. App.--Beaumont 2006, pet denied) .................................................. 8, 9

*Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) ................. 3

*Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) .................... 15

*United States v. $49,000 Currency,* 330 F.3d 371, 376 (5th Cir. 2003) ............. 4

*Verizon Corporate Servs. v. Kan-Pak Systems*, 290 S.W.3d 899, 904
    (Tex. App.--Amarillo 2009, no pet.) ............................................................ 9

*Walker Ins. Services v. Bottle Rock Power*, 108 S.W.3d 538, 549-550
    (Tex. App.--Houston [14th Dist.] 2003, no pet.)..................................... 9, 10

*Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796,805 (5th Circuit 2003).................... 3

*Williams Nat. Gas Co. v. City of Oklahoma City*,
    C.A.10th, 1989, 890 F.2d 255, 265 n. 11 ..................................................... 5

*Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, S.Ct. 1994, 1999 (2007) ................... 1

*Wright, Miller & Cooper*, certiorari denied 497 U.S. 1003, 111 L.Ed.2d 747........................ 5

U.S. Constitution

Art. VI, Cl. 2........................................................................................................ 4

Texas Constitution

Art. V, §§ 1, 8 .................................................................................................... 11

## U.S. Statutes

28 U.S.C. §1654 ...................................................................................... 2

## Texas Statutes

Business and Commerce Code Chapter 2 .................................................. 6, 7

Business Organizations Code § 21.552 ..................................................... 10

Government Code § 24.007 ....................................................................... 11

Government Code § 24.008 ....................................................................... 11

## RULES

Tex. R. Civ. P. 166a .................................................................................. 12

TO THE HONORABLE FOURTEENTH COURT OF APPEALS:

Appellant, Richard Alan Haase ("Haase") respectfully presents his reply brief ("Rp.Br.") to the Fourteenth Court of Appeals ("the Court") in reply to Appellee, Hychem, Inc. ("Hychem") response to Haase's Principal Brief ("P.Br.").

## Preliminary Statement

The Hychem Response Brief ("R.Br.") is a very good example of what is wrong with our justice system today. Yes, attorneys are allowed significant latitudes in defense of their client. However, false representations by officers of the court defile our courts. Further, omissions (in this case blatant omissions) by officers of the court defile our courts. Further still, to wrap false representations and omissions into a salaciousness before the Court that is best likened to "Fox News" lowers our justice system to a point of depravity.

Haase respectfully prays that the Court look past Hychem's salaciousness. This is not Fox News, the Jerry Springer Show or Payton Place; in strong contrast to R.Br., this is an appellate court in the State of Texas. Haase respectfully prays that the Court look past the many false representations and omissions performed by Hychem before the Court. Haase respectfully prays that the Court not allow Hychem to mislead. Haase respectfully prays that the Court review this appeal in light of the evidence presented and established precedent.

In strong contrast to Hychem salacious false representations, Haase does not attempt to relitigate ANY federal matter in this proceeding (R.Br. 2).

ARGUMENT

R.Br. makes much to do about the fact that Haase is representing himself Pro' Se'.

While such an argument sounds relevant, it is not. Haase does not have to be an

attorney, member of any organization nor club to practice law. As a citizen of Texas

("TX") and the United States ("US"), Haase has a right to protect his Rights. As

provided by the US Supreme Court ("SCt"), "[a] litigant has the right to represent

[themselves] without an attorney" [28 U.S.C. § 1654; and, *Winkelman v. Parma City

Sch. Dist.*, 550 U.S. 516, SCt. 1994, 1999 (2007)].

## I. Fraud-Upon-the-Court

R.Br. falsely presents "Haase devotes the majority of his brief to various

unsupported and baseless accusations about the conduct of a federal district court judge,

the federal circuit court of appeals, and other entities who are not parties to this

proceeding and that he alleges took place during two prior federal trials. …" (R.Br. 1).

There is no basis in fact to support this allegation/argument. Actions performed in the

federal district court and Court of Appeals for the Federal Circuit ("CAFC") required

two (2) trials (6:06-cv-197 TX Eastern), three (3) appeals (CAFC 07-1487, 11-1078 &

12-1595 – two (2) of which were filed by members of the bar) and two (2) petitions

before the US SCt (12-212 & 14-5045 – one of which was filed by a member of the

bar); in no instance does Haase attack the Courts as claimed. One cannot or should not

file an appeal unless a significant error in law is perceived. One cannot or should not

file a petition to the US S Ct or the TX SCt unless a significant violation of

Constitutional Law is perceived; where again, three (3) attorneys before the bar filed appeals/petitions in addition to Haase.  This Hychem allegation/argument is an attempt to anger the Court, mislead the Court, past evidence and precedent.

Haase does honestly believe his US and TX Constitutional Rights violated.  At the federal level, Haase does truly believe his US Constitutional Rights violated, as presented in two (2) petitions before the US S Ct (12-212 & 14-5045 – one filed by a member of the bar).  At the state level, Haase does believe his TX and US Constitutional Rights violated, as minimally presented in one (1) petition before the TX SCt (12-0977) and before the US SCt (13-5159).  Haase does believe that at the federal level, Haase got caught up in a conservative program of judicial activism to significantly reduce US Patent Rights (at this point, almost any patent attorney will attest).  Haase does believe at the state level, the bar has significant issues with a Pro Se' Party filing suit against favored bar members, specifically in the instant case the Hon. Harvey Brown.

The question and potential exposure for the US and TX is whether or not Fraud-Upon-the-Court has been performed.  If so, Haase does have significant rights that go beyond those proceedings, regardless of Hychem's argument of finality[1].

---

[1] "Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in 'fraud upon the court'" [*Bulloch v. United States*, 763 F.2d 1115,1121 (10th Cir. 1985)], the court stated 'Fraud upon the court is fraud which is directed to the judicial machinery ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted'"; FRCP 60; see also, *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796,805 (5th Cir. 2003); see also, *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945); *Moore* 60.37[3] at 633-34; *Kithcart v. Metropolitan Life Ins. Co.*, 119 F.2d 497 (8th Cir. 1941); *Crim v. Handley*, 94 U.S. 652 (1876); *Grubb v. Public Util. Comm'n*, 281 U.S. 470 (1930); *Sorenson v. Sutherland*, 109 F.2d 714 (2d Cir. 1940). *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Juul v. Fed. Express*, 260 F.3d 622 (5th Cir. 2001); *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir. 2001); *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir.

## II. Laws of Supremacy and the Case

R.Br. tries to purport that the prior ruling in favor of the severed parties defines a law of the case that the Court cannot rule against. However, the laws of Supremacy and of the Case apply to federal precedent that actually defines Law of the Case and presents that *Haase I* (Haase *v. Pearl River Polymers, Inc.*, No. 14-11-00024-CV, 2012 WL 4166826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied), *cert. denied*, 2013 WL 3380971, (Oct. 7, 2013) was in error, as evidenced and presented in Haase's Principal Brief (P.Br. 13 & 32-39).

Respectfully, prior federal rulings, specifically CAFC 07-1487 (P.Br. App. L) and Remand to the State of TX (P.Br. App. O) are Supreme[2] and Law of the Case[3].

"[S]tates do not have authority to nullify federal law" [*Ableman v. Booth*, 62 U.S. 506 (1859); and, *Cooper v. Aaron*, 358 U.S. 1 (1958)]. State courts cannot issue

---

1995); Natural Gas Pipeline Co. v. America, 2F.3d 1397, 1406 (5th Cir. 1993); and United States v. $49,000 Currency, 330 F.3d 371,376 (5th Cir. 2003). See also, 7 MOORE 60.37[1] nn.38 8- 39.
No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land [Tex. Const. Art I, § 19]. *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *In re K.A.S.*, 131 S.W.3d 215, 230–31 (Tex. App.-Fort Worth 2004, pet. denied); see also *In re B.L.D.*, 113 S.W.3d 340, 349–55 (Tex. 2003).
"[T]here is an admitted exception to th[e] general rule [that an issue once litigated to a final judgment will bar subsequent litigation on the same issue] in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent . . . which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing. ... [T]he acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, *extrinsic or collateral,* to the matter tried by the first court, and *not* to a fraud in the matter on which the decree was rendered." [98 U.S. 65-66, 68 (1868)]. (Emphasis added)
[2] "This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding" [U.S. Constitution, Art. VI, Cl. 2] (P.Br. App. 06).
[3] *Fuhrman v. Dretke*, 442 F.3d 893 (5th Cir. 2006).

rulings that contradict the decisions of federal courts [*Id*.]. Further, federal circuit and district court rulings define in a state court "Law of the Case"[3].

State courts are required and historically have given federal judgments their "full faith and credit" deserved[4]. "It would be unthinkable to suggest that state courts should be free to disregard the judgments of federal courts … The suggestion is so unthinkable that the rule requiring state courts to honor the res judicata effects of federal court judgments has been stated in an unbroken line of cases that do not offer any clear judicial thought or explanation"[5].

Haase presents, evidences and argues, that Federal Law of the Case in combination with available evidence traverse summary judgment (P.Br. 32-39).

### III. Hychem is Liable

Throughout R.Br., Hychem argues that it is not liable; because, the products sold were manufactured by SNF Holding Company ("SNF" – *Haase I* defendant), that products were shipped by SNF and certificates of analysis were prepared by SNF.

---

[4] 18B Fed. Prac. & Proc. Juris. § 4468, Wright & Miller, 2013.

[5] *Id.* See also, *Williams Nat. Gas Co. v. City of Oklahoma City*, C.A.10th, 1989, 890 F.2d 255, 265 n. 11, quoting *Wright, Miller & Cooper*, certiorari denied 110 S.Ct. 3236, 497 U.S. 1003, 111 L.Ed.2d 747. See *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, C.A.3d, 1985, 755 F.2d 38, 43, quoting *Wright, Miller & Cooper*, certiorari denied 106 S.Ct. 67, 474 U.S. 819, 88 L.Ed.2d 54. The court affirmed refusal to vacate a consent decree entered in federal litigation on the basis of a subsequent state-court decision that the state officials who consented to the decree lacked authority to do so. It concluded that the state decision was an impermissible collateral attack on the federal judgment.
"What was attempted in the state courts and the ostensible relief granted by the state's highest court, of course, flies in the face of settled law and the doctrine of res judicata." 755 F.2d at 43. Again, it observed: "Only the federal courts have the power to determine the authority of federal court litigants, bringing suit under federal law, to enter into consent decrees approved by a federal court." 755 F.2d at 44 (per Aldisert, C.J.).

As evidenced and argued by Haase (P.Br. 16, 19 & 36), all of the polyDADMAC products are labelled in shipment and invoiced as by Hychem. Further, as evidenced and argued by Haase (P.Br. 20-22), certificates of analysis are labelled as from Hychem. In conclusion, it is without question that Hychem is the Seller.

The TX Business and Commerce Code (App. 9) does not allow Hychem to escape or shirk liability:

"'Buyer' means a person who buys or contracts to buy goods" [TX Business and Commerce Code 2.103 (1)]. Therefore, Haase is the Buyer.

"'Seller' means a person who sells or contracts to sell" [TX Business and Commerce Code 2.103 (4)]. Therefore, Hychem is the Seller.

"'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill" [TX Business and Commerce Code 2.104(a)]. Therefore, Haase and Hychem are Merchants.

"'Between merchants' means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants" [TX Business and Commerce Code 2.104(c)].

"Unless otherwise agreed specifications relating to assortment of the goods are at the buyer's option … arrangements relating to shipment are at the seller's option" [TX Business and Commerce Code 2.311(a)]. Therefore, shipper is Hychem's option.

"A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach." [TX Business and Commerce Code 2.210(a)]. Therefore, Hychem cannot delegate its duty.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. … Any description of the goods which is made part of the basis of the bargain creates an express warranty that

the goods shall conform to the description." [TX Business and Commerce Code 2.313 (1) & (2)]. Therefore, Hychem product labelling and certificate of analysis create a warranty that the products shipped were as represented.

"IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE.
    (a) Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
    b) Goods to be merchantable must be at least such as
        (1) pass without objection in the trade under the contract description; and
        (2) in the case of fungible goods, are of fair average quality within the description; and
        (3) are fit for the ordinary purposes for which such goods are used; and
        (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
        (5) are adequately contained, packaged, and labeled as the agreement may require; and
        (6) conform to the promises or affirmations of fact made on the container or label if any.
    (c) Unless excluded or modified other implied warranties may arise from course of dealing or usage of trade." [TX Business and Commerce Code 2.314].

Therefore, Hychem has implied warranties, as well.

There is no question, pursuant the TX Business and Commerce Code, that Hychem is liable and cannot transfer or shirk its duties and responsibilities.

### IV. Haase has Standing

R.Br. makes repeated argument that Haase has no standing; as, Hychem dealt with ClearValue, Inc. ("CVI"). Hychem thereby misleads with both false representation and omission. In actuality, Hychem dealt with Moon Chemical Company ("Moon"), as evidenced by Hychem invoices (P.Br. 16-19 & 36). Therefore, Hychem dealt with Moon, not CVI, as evidenced (*Id.*). Most importantly, it is evidenced that Haase personally lost customers and is damaged due to acts of Hychem (CR 2284).

The proper legal question is whether or not Moon operated as an Agent for Haase. As presented to the trial court, it is evidenced that Moon operates as an Agent of Haase, as well as, CVI. Moon purchased products from Hychem, at the direction of Haase, and blended those products for customers of CVI and Haase (P.Br. 6, 16-19 & 36).

An Agent is either a general or a special agent. When an agency is established without a showing of its extent, it is presumed to be a general agency [*Hearn v. Hanlon-Buchanan, Inc.*, 179 S.W.2d 364, 367 (Tex. Civ. App.--Fort Worth 1944, writ ref'd w.o.m.)]. A general Agent is authorized to conduct all of the business of a particular kind or in a particular place on behalf of the principal. A general Agent does not necessarily have unlimited powers but rather such an agent usually has broad powers within a defined area [*First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.)]. Persons dealing with a general Agent in relation to the principal's business are not affected by any secret instructions limiting the agent's authority's that have not come to their knowledge [*Thomas Regional Directory v. Dragon Prods.*, 196 S.W.3d 424, 429 (Tex. App.--Beaumont 2006, pet denied) ]. In contrast, a special Agent is only authorized to do specific acts in conjunction with a particular transaction [*Schaff v. Stripling*, 265 S.W.264, 266 (Tex. Civ. App.--Texarkana 1924, writ dism'd); *Cherokee Water Co. v. Forderhause*, 727 S.W.2d 605, 612 (Tex. App.--Texarkana 1987), *rev'd on other grounds*, 741 S.W.2d 377 (Tex. 1987) (agent's duties in obtaining landowners' signatures on deeds included incidental duty to explain nature of deeds)]. Persons dealing with a special Agent must inquire as to the agent's instructions and, if they fail to do so, the principal is not bound for an act of its Agent beyond the scope of the agent's authority

absent some proof that the principal held out the agent as having the power to do the particular act or that the principal ratified the act [*Thomas Regional Directory v. Dragon Prods.*, 196 S.W.3d 424, 429 (Tex. App.--Beaumont 2006, pet. denied)].

Actual Agent authority is the power of an Agent to act on behalf of the principal in accordance with the principal's manifestation of consent. The actual authority to act for a principal must be conferred on the Agent by the principal. It is distinguished from apparent authority, which is based on the conduct of the principal in relation to a third party rather than on any agreement existing between the principal and Agent[6]. Actual authority denotes authority the principal intentionally confers on the Agent, or intentionally or negligently allows the agent to believe that the agent possesses[7].

Actual Agent authority may be expressly conveyed either orally or in writing[8]. A principal delegates express authority to an agent by words that expressly and directly authorize the agent to do an act or series of acts on the principal's behalf[9]. Any powers conferred by an instrument appointing an agent must be strictly construed; the

---

[6] *In re ADM Investor Services, Inc.*, 304 S.W.3d 371, 374 (Tex. 2010); *Suzlon Energy v. Trinity Structural Towers*, 436 S.W.3d 835, 842 (Tex. App.--Dallas 2014, no pet. h.); *Reliant Energy Servs. v. Cotton Valley*, 336 S.W.3d 764, 784 (Tex. App.--Houston [1st Dist.] 2011, no pet.); *Neubaum v. Buck Glove Co.*, 302 S.W.3d 912, 916-917 (Tex. App.--Beaumont 2009, no pet.); *In re J.P.*, 296 S.W.3d 830, 836 (Tex. App.--Fort Worth 2009, no pet.).

[7] *Expro Americas v. Sanguine Gas Exploration*, 351 S.W.3d 915, 921 (Tex. App.--Houston [14th Dist.] 2011, pet. denied); *Reliant Energy Servs. v. Cotton Valley*, 336 S.W.3d 764, 783 (Tex. App.--Houston [1st Dist.] 2011, no pet.); *Nears v. Holiday Hospitality Franchising*, 295 S.W.3d 787, 795 (Tex. App.--Texarkana 2009, no pet.); *Verizon Corporate Servs. v. Kan-Pak Systems*, 290 S.W.3d 899, 904 (Tex. App.--Amarillo 2009, no pet.).

[8] *Builders Transport, Inc. v. Grice-Smith*, 167 S.W.3d 1, 12 (Tex. App.--Waco 2005, pet. denied); *Walker Ins. Services v. Bottle Rock Power*, 108 S.W.3d 538, 549-550 (Tex. App.--Houston [14th Dist.] 2003, no pet.).

[9] *Expro Americas v. Sanguine Gas Exploration*, 351 S.W.3d 915, 921 (Tex. App.--Houston [14th Dist.] 2011, pet. denied); *Reliant Energy Servs. v. Cotton Valley*, 336 S.W.3d 764, 783 (Tex. App.--Houston [1st Dist.] 2011, no pet.); *Nears v. Holiday Hospitality Franchising*, 295 S.W.3d 787, 795 (Tex. App.--Texarkana 2009, no pet.).

authority granted by a written agreement of agency may not be extended beyond the express terms of the instrument or what is necessary to carry out the authority that has been expressly granted[10].  The existence of an agency relationship based on actual authority may also be implied from the parties' conduct or from the facts and circumstances surrounding the transaction in question[11].

There can be no question that Moon acted as an Agent for Haase and CVI.  Actual authority is well evidenced (*Supra*).

R.Br. further argues that Haase has no standing; because, Haase is a shareholder of CVI and not CVI itself.  Regardless of the evidence and argument that Moon is an Agent of Haase, as well as CVI, Haase further has sanding; as, Haase is a significant shareholder of CVI, as evidenced (P.Br. 11).  A significant shareholder has standing.

The governing statutes require a plaintiff in a derivative proceeding to be a shareholder of the corporation at the time when the derivative proceeding is commenced[12]. Furthermore, a person must be a shareholder to either institute *or maintain* a derivative proceeding [Tex. Bus. Orgs. Code § 21.552].

---

[10] *Gittings, Neiman-Marcus, Inc. v. Estes*, 440 S.W.2d 90, 93 (Tex. Civ. App.--Eastland 1969, no writ); *Sun Appliance & Elec., Inc. v. Klein*, 363 S.W.2d 293, 296 (Tex. Civ. App.--Eastland 1962, no writ)

[11] *Expro Americas v. Sanguine Gas Exploration*, 351 S.W.3d 915, 921 (Tex. App.--Houston [14th Dist.] 2011, pet. denied); *Gibson v. Bostick Roofing and Sheet Metal*, 148 S.W.3d 482, 492 (Tex. App.--El Paso 2004, no pet.); *Walker Ins. Services v. Bottle Rock Power*, 108 S.W.3d 538, 550 (Tex. App.--Houston [14th Dist.] 2003, no pet.).

[12] Tex. Bus. Orgs. Code § 21.552 (standing requirements);  *Somers ex rel. EGL, Inc. v. Crane*, 295 S.W.3d 5, 14-15 (Tex. App.--Houston [1st Dist.] 2009, pet. denied) (*former* shareholders do not have standing); *see also  Krainz v. Kodiak Resources, Inc.*, 436 S.W.3d 325, 331-333 (Tex. App.-- Austin 2013) (law does not require possession of stock certificate to substantiate claim of ownership of stock, which may be shown by other evidence, such as nature of parties, nature of their relationship, and their representations to each other).

**V. Texas Has Jurisdiction to Non-exclusive/Non-preemptive Federal Claims**

R.Br. repeatedly argues TX has no jurisdiction to federal claims; that is incorrect. District courts are constitutional courts of general jurisdiction [Tex. Const. Art. 5 §§ 1, 8; Tex. Gov't Code §§ 24.007, 24.008]. A district court has original jurisdiction of a civil matter in which the amount in controversy is more than $500, exclusive of interest [Tex. Gov't Code § 24.007]. The district court is the preeminent Texas trial court. It has "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body" [Tex. Const. art. 5 § 8; *Subaru of America v. David McDavid Nissan*, 84 S.W.3d 212, 220 (Tex. 2002) (courts of general jurisdiction are presumed to have subject matter jurisdiction unless contrary showing is made)].

In some cases, the subject matter jurisdiction of all Texas courts will be defeated by a species of federal preemption. But, in most cases, the district court does not lose jurisdiction merely because the defendants allege that the action should have been characterized as an action under federal law and brought in federal court. Texas courts may not refuse to entertain claims arising under federal law unless federal jurisdiction is exclusive. In the instant case, Hychem has not demonstrated that federal jurisdiction is exclusive [*Testa v. Katt*, 330 U.S. 386, 393, 67 S. Ct. 810 (1947)]. Further, if federal law does not require that the claim be tried in federal court, preemption is merely an affirmative defense and does not deprive a state court of jurisdiction [*Mills*

*v. Warner Lambert Co.*, 157 S.W.3d 424,427 (Tex.2005)].  Hychem has not demonstrated any federal preemption.  TX has jurisdiction for Haase's claims.

### VI. A Genuine Material Facts Support Each Element of Each Claim

While Hychem attempts to mislead the Court with false representations and omissions, Haase has provided the Court a genuine material fact in support of each element of each of Haase's claims (P.Br. 16-32).   Respectfully, Haase is only required to provide competent controverting evidence that simply raises a genuine issue of material fact[13].  And respectfully, the Court is to examine the evidence in a light that is most favorable to [Haase][14].

### A.  Fraud is Evidenced.

"(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party to whom the representation was made acted in reliance on the representation; and (6) the party suffered injury as a result" [*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011)] (P.Br. 16-23).

---

[13] "Non-movant has provided competent controverting evidence, at a minimum, that proves the existence of a genuine issue of material fact with regard to each element within Movants' motion for summary judgment" [*Centeq Realty v. Siegler,*  899 S.W.2d at 195, 38 Tex. Sup. Ct. J. 658 (Tex. May 25, 1995) (No. 94-0573)].  And, "the non-movant must produce competent evidence sufficient to raise a fact issue on the challenged elements of its claims" [*Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.); see also, TRCP 166a].

[14] "We examine the evidence in the light most favorable to the Non-movant and we indulge all reasonable inferences and resolve all doubts in the Non-movant's favor" [*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curium)].

Haase further reminds the Court that the polyDADMAC shipments measured 495 centipoise seconds (cps) at 20% concentration, when 1980 cps was represented and 1000 cps is the specification minimum (P.Br. 6-7); in summary, the shipments were woefully out of specification. The statistical probability of such an error to have occurred three (3) times by chance is only $3 \times 10^{-17} \approx 0.00000000000000003$[15,16]. Therefore, the probability that the three (3) shipments were performed knowingly is 0.9999999999999997[16,17]. Therefore, it is statistically impossible that Hychem did not intend for Haase to rely and/or be influenced by the false representations/omissions. Hychem and SNF intended to harm Haase; and, they did[18].

As evidenced and argued by Haase, viscosity is a critical parameter of polyDADMAC performance (P.Br. 7); therefore, it is without question that Hychem's acts are proximate cause of Haase's loss of customers and income; and as viscosity is determinative of molecular weight (*Id.*), it is without question that Hychem's viscosity false representations/omissions are a substantial factor, if not proximate cause, to Haase's damages (slander, sanction and costs) in the first federal trial; as the Hychem viscosity false representations/omissions were the basis of the false representations/ omissions of SNF/WrightBrownClose, LLP ("Brown") in the underlying Federal

---

[15] CR 2248, P.Br. App. Q, Expert Report of Dr. Robert Hill.

[16] A probability of "0" reveals statistically that an event will not occur; while, a probability of "1" reveals statistically that an event will. A probability of 0.05 or less is indicative of an improbability; and, a probability of greater than 0.95 is indicative of probability. (*Id.*)

[17] There are two mutually exclusive and collectively exhaustive outcomes. The first is that the 3 out-of-specification shipments occurred by chance or mistake and the second is that the 3 occurred knowingly. Both probabilities add to 1. (*Id.*).

[18] *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 629 (Tex. App.—Fort Worth 2005, no pet.) (citations omitted) (emphasis added); *see also Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 578–80 (Tex. 2001).

Complaint. Had the Hychem polyDADMAC shipped in specification, there would have been no reason for James Stoll to coordinate testing. Were it not for the acts of Hychem, Haase would not be damaged by either the federal sanction or his loss of customers/income. "[Hychem] will be held to cause plaintiff's injury only if the act or omission is a substantial factor in bringing about the injury and without which no harm would have been incurred. [*Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985)]. Reasonable people would regard Hychem's acts as a cause. "[Hychem's] conduct is considered a substantial factor if it 'had such an effect in producing the harm as to lead reasonable people to regard it as a cause.'" [*Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)].

## B. Conspiracy is Well Evidenced.

The essential elements of conspiracy are evidenced: "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result" [*Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998)] (P.Br. 23-25). R.Br. argues that there was no meeting of the minds. However, all conspiring parties (SNF, Brown and Hychem) made the same false representations to harm Haase (P.Br. 23-25). All is while, it is statistically impossible for each party's false representations to have been made by chance (*Supra*); therefore, the false representations made by each party were performed knowingly, where, a meeting of the minds was performed.

*Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995); see also,

*Angelou v. African Overseas Union*, 33 S.W.3d 269, 278–79 (Tex. App.—Houston

[14th Dist.] 2000, no pet.); *Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 717 (Tex.

App.—Houston [1st Dist.] 1988, writ denied).

## C. Haase Has Valid Extortion/Exploitation/Slander Claims

In P.Br., Haase evidences attempted extortion by co-conspirators SNF and Brown

to take from Haase his intellectual property (P.Br. 2 & 31-32).

It is without question that the judicial process has been used to slander Haase (P.

Br. 26-30), as evidenced in the Memorandum, Opinion and Order of Judge Davis, June

2007 (P.Br. App. J).

As neither 585 cps, nor 495 cps at 20% concentration in water (viscosity of

Hychem misrepresented/out-of-specification polyDADMAC), can be greater than

1,000 cps (SNF product viscosity specification) nor about 1980 cps (Hychem viscosity

certificate of analysis)(P.Br. p. 6-7), it is impossible by third (3rd) grade arithmetic

that the misrepresented/out-of-specification polyDADMAC was as represented by

Hychem to Moon or as represented by SNF and Brown in the underlying Federal

Complaint[19].  Further, it is without question that acts of Hychem, SNF and Brown

were intentional; as, it is statistically impossible for the events (acts) to have happened

by chance (*Supra*); therefore, the events (acts) of Hychem, SNF and Brown were

intentional.  A goal of Hychem, SNF and Brown has been to slander Haase; and, to use

---

[19] *ClearValue, Inc. and Haase v. Pearl River Polymers, Inc,, et al.*, 6:07-cv-197 in the Eastern District
of Texas.

a federal judge, Leonard Davis, to complete the slander, e.g. exploitation of the judicial process.

Slander of Haase, as performed by Hychem/SNF/Brown, was performed in an exploitation of the judicial process to mislead district judge Leonard Davis with false representations and omissions to write a Memorandum, Opinion and Order that would harm Haase by slander. Exploitation was successful, as evidenced (P.Br. App. J).

Haase filed a claim for slander in his Original Petition (CR 015) September 18, 2009, just 87 days after CAFC 07-1487 Mandate, June 23, 2009. "For the purposes of application of limitations statute, a cause of action accrues when facts come into existence authorizing a claimant to seek a judicial remedy, and the aggrieved party knows or should know of the existence of these facts" [*Sharpe v. Roman Catholic Diocese of Dallas*, 97 S.W.3d 791, 795 (Tex. App.-Dallas 2003, pet. denied)]. While, 07-1487 Ruling was necessary for Haase to have a slander claim; as, the 07-1487 Ruling (P.Br. App. L) demonstrates the slanderous components of the June 2007 Memorandum, Opinion and Order of Judge Davis (P.Br. App. J) to be in error, as argued previous (P.Br. 33-34); "truth is an affirmative defense to slander" [*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640 (Tex. 1995)].

Regardless, in a federal action, exploitation of the judicial process is a form of Fraud-Upon-the-Court[1] that comprises false representations and omissions before the court to mislead. There is no federal statute of limitations for exploitation of the judicial process, nor Fraud-Upon-the-Court.

Even though R.Br. attempts to tie slander of Haase to TX Limitations Statutes, Haase was timely (*Supra*); while under the correct claim, as filed by Haase, exploitation of the judicial process, there is no statute of limitations.

## VII. Haase Is Damaged

R.Br. repeatedly argues that Haase has not been damaged. ***In strong contrast, Haase has been significantly damaged*** in that:

1) Haase is now sanctioned $121,107 and must pay costs of $115,491 (CR 2285), where the sanction and court costs are a direct result of testing performed on Hychem misrepresented/out-of-specification polyDADMAC.

2) Haase lost customers that provided him an income (CR 2284).

3) Haase has been slandered due to acts of Hychem co-conspirators (SNF/Brown) in the underlying Federal Complaint; acts that were enabled by Hychem misrepresented/out-of-specification polyDADMAC (CR 2284), from which:

   4) Haase has been unable to prosecute his patents that are valued over $20,000,000 (CR 2285).

   5) Haase has been unable to commercialize his patents, where commercialization is valued over $100,000,000 (CR 2285).

   6) Haase has been unable to enforce his patent rights that are valued over $1 billion (CR 2285).

An expert damage model prepared by Dr. Robert Hill has Haase's damages in excess of $20,000,000,000 (CR 2520).

## Summary and Conclusions

Haase has properly traversed every argument in the R.Br.

In P.Br. and Rp.Br., Haase provides a genuine material fact in support of each element of each claim[13]. Where respectfully, the Court is to evaluate the evidence in a light that is most favorable to Haase[14]. These material facts traverse summary judgment.

Further, in P.Br., Haase presents federal rulings per the laws of Supremacy and of the Case, that in combination with material evidence, traverse summary judgment.

PAYER

Haase prays that the Court Reverse and Remand for a trial on the merits.

As *Haase I* comprises issues of Fraud-Upon-the-Court, which have no statute of limitation, Haase prays that the Court Reverse and Remand *Haase I* along with the instant appeal for a trial on the merits.

Respectfully submitted,

Richard Haase, Pro Se'
4402 Ringrose Drive
Missouri City, Texas 77459
Phone: 281-261-9543
Richard.Haase@clearvalue.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on Appellee, through counsel of record,

Mr. John Johnson, Esq. and Richard L. Tate, as presented below:


Mr. John W. Johnson, Esq.
Creighton, Fox, Johnson & Mills, PLLC
P.O. Box 5607
Beaumont, Texas 77726
**By e-mail – jwj@cfjmlaw.com**


Richard L. Tate, Esq.
Tate, Moeher & King, LLP
206 S. Second Street
Richmond, Texas  77469
**By e-mail – rltate@tate-law.com**



_____
Richard Alan Haase, Pro Se'

Richard Alan Haase
4402 Ringrose Drive
Missouri City, Texas  77459
Phone:  (281) 261-9543
Richard.Haase@clearvalue.com

| RICHARD ALAN HAASE; | § | IN THE TEXAS FOURTEENTH |
|---|---|---|
| *Plaintiff, Appellant* | § | |
| | § | |
| *Vs.* | § | COURT OF APPEALS |
| | § | |
| HYCHEM, INC.; | § | |
| *Defendant, Appellee* | § | HOUSTON, TEXAS |

## APPELLANT'S PRINCIPAL BRIEF

## APPENDIX

| RICHARD ALAN HAASE; | § | IN THE TEXAS FOURTEENTH |
|---|---|---|
| *Plaintiff, Appellant* | § | |
| | § | |
| *Vs.* | § | COURT OF APPEALS |
| | § | |
| HYCHEM, INC.; | § | |
| *Defendant, Appellee* | § | HOUSTON, TEXAS |

## APPELLANT'S REPLY BRIEF

## APPENDIX 9

BUSINESS AND COMMERCE CODE

TITLE 1. UNIFORM COMMERCIAL CODE

CHAPTER 2. SALES

SUBCHAPTER A. SHORT TITLE, GENERAL CONSTRUCTION AND SUBJECT MATTER

Sec. 2.101.  SHORT TITLE.  This chapter may be cited as Uniform Commercial Code--Sales.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.102.  SCOPE;  CERTAIN SECURITY AND OTHER TRANSACTIONS EXCLUDED FROM THIS CHAPTER.  Unless the context otherwise requires, this chapter applies to transactions in goods;  it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction nor does this chapter impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.103.  DEFINITIONS AND INDEX OF DEFINITIONS.  (a)  In this chapter unless the context otherwise requires

        (1)  "Buyer" means a person who buys or contracts to buy goods.
        (2)  Reserved.
        (3)  "Receipt" of goods means taking physical possession of them.
        (4)  "Seller" means a person who sells or contracts to sell goods.
    (b)  Other definitions applying to this chapter or to specified subchapters thereof, and the sections in which they appear are:
        "Acceptance".  Section 2.606.
        "Banker's credit".  Section 2.325.
        "Between merchants".  Section 2.104.

"Cancellation".  Section 2.106(d).

"Commercial unit".  Section 2.105.

"Confirmed credit".  Section 2.325.

"Conforming to contract".  Section 2.106.

"Contract for sale".  Section 2.106.

"Cover".  Section 2.712.

"Entrusting".  Section 2.403.

"Financing agency".  Section 2.104.

"Future goods".  Section 2.105.

"Goods".  Section 2.105.

"Identification".  Section 2.501.

"Installment contract".  Section 2.612.

"Letter of credit".  Section 2.325.

"Lot".  Section 2.105.

"Merchant".  Section 2.104.

"Overseas".  Section 2.323.

"Person in position of seller".  Section 2.707.

"Present sale".  Section 2.106.

"Sale".  Section 2.106.

"Sale on approval".  Section 2.326.

"Sale or return".  Section 2.326.

"Termination".  Section 2.106.

(c)  The following definitions in other chapters apply to this chapter:

"Check".  Section 3.104.

"Consignee".  Section 7.102.

"Consignor".  Section 7.102.

"Consumer goods".  Section 9.102.

"Control".  Section 7.106.

"Dishonor".  Section 3.502.

"Draft".  Section 3.104.

(d)  In addition Chapter 1 contains general definitions and principles of construction and interpretation applicable throughout this chapter.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1999, 76th Leg., ch. 414, Sec. 2.14, eff. July 1, 2001;  Acts 2003, 78th Leg., ch. 542, Sec. 2, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 3, eff. September 1, 2005.


Sec. 2.104. DEFINITIONS: "MERCHANT"; "BETWEEN MERCHANTS"; "FINANCING AGENCY". (a) "Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

(b) "Financing agency" means a bank, finance company or other person who in the ordinary course of business makes advances against goods or documents of title or who by arrangement with either the seller or the buyer intervenes in ordinary course to make or collect payment due or claimed under the contract for sale, as by purchasing or paying the seller's draft or making advances against it or by merely taking it for collection whether or not documents of title accompany or are associated with the draft. "Financing agency" includes also a bank or other person who similarly intervenes between persons who are in the position of seller and buyer in respect to the goods (Section 2.707).

(c) "Between merchants" means in any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by:

Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 4, eff. September 1, 2005.


Sec. 2.105. DEFINITIONS: TRANSFERABILITY; "GOODS"; "FUTURE" GOODS; "LOT"; "COMMERCIAL UNIT". (a) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as

described in the section on goods to be severed from realty (Section 2.107).

(b)  Goods must be both existing and identified before any interest in them can pass.  Goods which are not both existing and identified are "future" goods.  A purported present sale of future goods or of any interest therein operates as a contract to sell.

(c)  There may be a sale of a part interest in existing identified goods.

(d)  An undivided share in an identified bulk of fungible goods is sufficiently identified to be sold although the quantity of the bulk is not determined.  Any agreed proportion of such a bulk or any quantity thereof agreed upon by number, weight or other measure may to the extent of the seller's interest in the bulk be sold to the buyer who then becomes an owner in common.

(e)  "Lot" means a parcel or a single article which is the subject matter of a separate sale or delivery, whether or not it is sufficient to perform the contract.

(f)  "Commercial unit" means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use.  A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.106.  DEFINITIONS: "CONTRACT"; "AGREEMENT"; "CONTRACT FOR SALE"; "SALE"; "PRESENT SALE"; "CONFORMING" TO CONTRACT; "TERMINATION"; "CANCELLATION".  (a)  In this chapter unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods.  "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time.  A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2.401).  A "present sale" means a sale which is accomplished by the making of the contract.

(b)  Goods or conduct including any part of a performance are

"conforming" or conform to the contract when they are in accordance with the obligations under the contract.

(c)  "Termination" occurs when either party pursuant to a power created by agreement or law puts an end to the contract otherwise than for its breach.  On "termination" all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.

(d)  "Cancellation" occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of "termination" except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.107.  GOODS TO BE SEVERED FROM REALTY:  RECORDING.  (a)  A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

(b)  A contract for the sale apart from the land of growing crops or other things attached to realty and capable of severance without material harm thereto but not described in Subsection (a) or of timber to be cut is a contract for the sale of goods within this chapter whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance.

(c)  The provisions of this section are subject to any third party rights provided by the law relating to realty records, and the contract for sale may be executed and recorded as a document transferring an interest in land and shall then constitute notice to third parties of the buyer's rights under the contract for sale.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1973, 63rd Leg., p. 998, ch. 400, Sec. 3, eff. Jan. 1, 1974.

SUBCHAPTER B. FORM, FORMATION AND READJUSTMENT OF CONTRACT

Sec. 2.201.  FORMAL REQUIREMENTS;  STATUTE OF FRAUDS.  (a) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.  A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(b)  Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of Subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

(c)  A contract which does not satisfy the requirements of Subsection (a) but which is valid in other respects is enforceable

(1)  if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement;  or

(2)  if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted;  or

(3)  with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2.606).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.202.  FINAL WRITTEN EXPRESSION:  PAROL OR EXTRINSIC EVIDENCE.  Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing

intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented

(1)  by course of performance, course of dealing, or usage of trade (Section 1.303);  and

(2)  by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 2003, 78th Leg., ch. 542, Sec. 3, eff. Sept. 1, 2003.

Sec. 2.203.  SEALS INOPERATIVE.  The affixing of a seal to a writing evidencing a contract for sale or an offer to buy or sell goods does not constitute the writing a sealed instrument and the law with respect to sealed instruments does not apply to such a contract or offer.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.204.  FORMATION IN GENERAL.  (a)  A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(b)  An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(c)  Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.205.  FIRM OFFERS.  An offer by a merchant to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, for lack of consideration, during the time stated or if no time is stated for a reasonable time, but in

no event may such period of irrevocability exceed three months; but any such term of assurance on a form supplied by the offeree must be separately signed by the offeror.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.206.  OFFER AND ACCEPTANCE IN FORMATION OF CONTRACT.  (a) Unless otherwise unambiguously indicated by the language or circumstances

(1)  an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(2)  an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods, but such a shipment of non-conforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

(b)  Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before acceptance.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.207.  ADDITIONAL TERMS IN ACCEPTANCE OR CONFIRMATION.  (a) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(b)  The additional terms are to be construed as proposals for addition to the contract.  Between merchants such terms become part of the contract unless:

(1)  the offer expressly limits acceptance to the terms of the offer;

(2)  they materially alter it;  or

(3)  notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(c)  Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.209.  MODIFICATION, RESCISSION AND WAIVER.  (a)  An agreement modifying a contract within this chapter needs no consideration to be binding.

(b)  A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(c)  The requirements of the statute of frauds section of this chapter (Section 2.201) must be satisfied if the contract as modified is within its provisions.

(d)  Although an attempt at modification or rescission does not satisfy the requirements of Subsection (b) or (c) it can operate as a waiver.

(e)  A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.210.  DELEGATION OF PERFORMANCE;  ASSIGNMENT OF RIGHTS. (a)  A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract.  No delegation of performance relieves the party delegating

of any duty to perform or any liability for breach.

(b)   Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance.  A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation can be assigned despite agreement otherwise.

(c)   The creation, attachment, perfection, or enforcement of a security interest in the seller's interest under a contract is not a transfer that materially changes the duty of or increases materially the burden or risk imposed on the buyer or impairs materially the buyer's chance of obtaining return performance within the purview of Subsection (b) unless, and then only to the extent that, enforcement actually results in a delegation of material performance of the seller.  Even in that event, the creation, attachment, perfection, and enforcement of the security interest remain effective, but (i) the seller is liable to the buyer for damages caused by the delegation to the extent that the damages could not reasonably be prevented by the buyer, and (ii) a court having jurisdiction may grant other appropriate relief, including cancellation of the contract for sale or an injunction against enforcement of the security interest or consummation of the enforcement.

(d)   Unless the circumstances indicate the contrary a prohibition of assignment of "the contract" is to be construed as barring only the delegation to the assignee of the assignor's performance.

(e)   An assignment of "the contract" or of "all my rights under the contract" or an assignment in similar general terms is an assignment of rights and unless the language or the circumstances (as in an assignment for security) indicate the contrary, it is a delegation of performance of the duties of the assignor and its acceptance by the assignee constitutes a promise by him to perform those duties.  This promise is enforceable by either the assignor or the other party to the original contract.

(f)   The other party may treat any assignment which delegates performance as creating reasonable grounds for insecurity and may without prejudice to his rights against the assignor demand assurances

from the assignee (Section 2.609).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.
Amended by Acts 1999, 76th Leg., ch. 414, Sec. 2.15, eff. July 1,
2001.


        SUBCHAPTER C. GENERAL OBLIGATION AND CONSTRUCTION OF CONTRACT

        Sec. 2.301.  GENERAL OBLIGATIONS OF PARTIES.  The obligation of
the seller is to transfer and deliver and that of the buyer is to
accept and pay in accordance with the contract.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


        Sec. 2.302.  UNCONSCIONABLE CONTRACT OR CLAUSE.  (a)  If the
court as a matter of law finds the contract or any clause of the
contract to have been unconscionable at the time it was made the court
may refuse to enforce the contract, or it may enforce the remainder of
the contract without the unconscionable clause, or it may so limit the
application of any unconscionable clause as to avoid any
unconscionable result.
        (b)  When it is claimed or appears to the court that the contract
or any clause thereof may be unconscionable the parties shall be
afforded a reasonable opportunity to present evidence as to its
commercial setting, purpose and effect to aid the court in making the
determination.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


        Sec. 2.303.  ALLOCATION OR DIVISION OF RISKS.  Where this chapter
allocates a risk or a burden as between the parties "unless otherwise
agreed", the agreement may not only shift the allocation but may also
divide the risk or burden.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


        Sec. 2.304.  PRICE PAYABLE IN MONEY, GOODS, REALTY, OR OTHERWISE.
(a)  The price can be made payable in money or otherwise.  If it is
payable in whole or in part in goods each party is a seller of the

goods which he is to transfer.

(b)  Even though all or part of the price is payable in an
interest in realty the transfer of the goods and the seller's
obligations with reference to them are subject to this chapter, but
not the transfer of the interest in realty or the transferor's
obligations in connection therewith.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.305.  OPEN PRICE TERM.  (a)  The parties if they so intend
can conclude a contract for sale even though the price is not settled.
In such a case the price is a reasonable price at the time for
delivery if
        (1)  nothing is said as to price;  or
        (2)  the price is left to be agreed by the parties and they
fail to agree;  or
        (3)  the price is to be fixed in terms of some agreed market
or other standard as set or recorded by a third person or agency and
it is not so set or recorded.
    (b)  A price to be fixed by the seller or by the buyer means a
price for him to fix in good faith.
    (c)  When a price left to be fixed otherwise than by agreement of
the parties fails to be fixed through fault of one party the other may
at his option treat the contract as cancelled or himself fix a
reasonable price.
    (d)  Where, however, the parties intend not to be bound unless
the price be fixed or agreed and it is not fixed or agreed there is no
contract.  In such a case the buyer must return any goods already
received or if unable so to do must pay their reasonable value at the
time of delivery and the seller must return any portion of the price
paid on account.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.306.  OUTPUT, REQUIREMENTS AND EXCLUSIVE DEALINGS.  (a)  A
term which measures the quantity by the output of the seller or the
requirements of the buyer means such actual output or requirements as
may occur in good faith, except that no quantity unreasonably

disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

(b)   A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.307.   DELIVERY IN SINGLE LOT OR SEVERAL LOTS.   Unless otherwise agreed all goods called for by a contract for sale must be tendered in a single delivery and payment is due only on such tender but where the circumstances give either party the right to make or demand delivery in lots the price if it can be apportioned may be demanded for each lot.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.308.   ABSENCE OF SPECIFIED PLACE FOR DELIVERY.   Unless otherwise agreed

(1)   the place for delivery of goods is the seller's place of business or if he has none his residence;   but

(2)   in a contract for sale of identified goods which to the knowledge of the parties at the time of contracting are in some other place, that place is the place for their delivery;   and

(3)   documents of title may be delivered through customary banking channels.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.309.   ABSENCE OF SPECIFIC TIME PROVISIONS;   NOTICE OF TERMINATION.   (a)   The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a reasonable time.

(b)   Where the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless

otherwise agreed may be terminated at any time by either party.

(c)   Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.310.   OPEN TIME FOR PAYMENT OR RUNNING OF CREDIT; AUTHORITY TO SHIP UNDER RESERVATION.   Unless otherwise agreed

(1)   payment is due at the time and place at which the buyer is to receive the goods even though the place of shipment is the place of delivery; and

(2)   if the seller is authorized to send the goods he may ship them under reservation, and may tender the documents of title, but the buyer may inspect the goods after their arrival before payment is due unless such inspection is inconsistent with the terms of the contract (Section 2.513); and

(3)   if delivery is authorized and made by way of documents of title otherwise than by Subdivision (2) then payment is due regardless of where the goods are to be received:

(A)   at the time and place at which the buyer is to receive delivery of the tangible documents; or

(B)   at the time the buyer is to receive delivery of the electronic documents and at the seller's place of business or if none, the seller's residence; and

(4)   where the seller is required or authorized to ship the goods on credit the credit period runs from the time of shipment but post-dating the invoice or delaying its dispatch will correspondingly delay the starting of the credit period.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by:

Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 5, eff. September 1, 2005.


Sec. 2.311.   OPTIONS AND COOPERATION RESPECTING PERFORMANCE.   (a) An agreement for sale which is otherwise sufficiently definite

(Subsection (c) of Section 2.204) to be a contract is not made invalid by the fact that it leaves particulars of performance to be specified by one of the parties.  Any such specification must be made in good faith and within limits set by commercial reasonableness.

(b)  Unless otherwise agreed specifications relating to assortment of the goods are at the buyer's option and except as otherwise provided in Subsections (a)(3) and (c) of Section 2.319 specifications or arrangements relating to shipment are at the seller's option.

(c)  Where such specification would materially affect the other party's performance but is not seasonably made or where one party's cooperation is necessary to the agreed performance of the other but is not seasonably forthcoming, the other party in addition to all other remedies

(1)  is excused for any resulting delay in his own performance;  and

(2)  may also either proceed to perform in any reasonable manner or after the time for a material part of his own performance treat the failure to specify or to cooperate as a breach by failure to deliver or accept the goods.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.312.  WARRANTY OF TITLE AND AGAINST INFRINGEMENT;  BUYER'S OBLIGATION AGAINST INFRINGEMENT.  (a)  Subject to Subsection (b) there is in a contract for sale a warranty by the seller that

(1)  the title conveyed shall be good, and its transfer rightful;  and

(2)  the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

(b)  A warranty under Subsection (a) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.

(c)  Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be

delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.313. EXPRESS WARRANTIES BY AFFIRMATION, PROMISE, DESCRIPTION, SAMPLE. (a) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.314. IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE. (a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as

(1) pass without objection in the trade under the contract description; and

(2)  in the case of fungible goods, are of fair average quality within the description;  and

(3)  are fit for the ordinary purposes for which such goods are used;  and

(4)  run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;  and

(5)  are adequately contained, packaged, and labeled as the agreement may require;  and

(6)  conform to the promises or affirmations of fact made on the container or label if any.

(c)  Unless excluded or modified (Section 2.316) other implied warranties may arise from course of dealing or usage of trade.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.315.  IMPLIED WARRANTY:  FITNESS FOR PARTICULAR PURPOSE. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.316.  EXCLUSION OR MODIFICATION OF WARRANTIES.  (a)  Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other;  but subject to the provisions of this chapter on parol or extrinsic evidence (Section 2.202) negation or limitation is inoperative to the extent that such construction is unreasonable.

(b)  Subject to Subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.  Language to exclude all implied

warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(c)  Notwithstanding Subsection (b)

(1)  unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty;  and

(2)  when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him;  and

(3)  an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

(d)  Remedies for breach of warranty can be limited in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy (Sections 2.718 and 2.719).

(e)  The implied warranties of merchantability and fitness shall not be applicable to the furnishing of human blood, blood plasma, or other human tissue or organs from a blood bank or reservoir of such other tissues or organs.  Such blood, blood plasma or tissue or organs shall not for the purpose of this Title be considered commodities subject to sale or barter, but shall be considered as medical services.

(f)  The implied warranties of merchantability and fitness do not apply to the sale or barter of livestock or its unborn young.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1979, 66th Leg., p. 190, ch. 99, Sec. 1, eff. May 2, 1979.


Sec. 2.317.  CUMULATION AND CONFLICT OF WARRANTIES EXPRESS OR IMPLIED.  Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which

warranty is dominant.  In ascertaining that intention the following rules apply:

  (1)  Exact or technical specifications displace an inconsistent sample or model or general language of description.

  (2)  A sample from an existing bulk displaces inconsistent general language of description.

  (3)  Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


  Sec. 2.318.  CHAPTER NEUTRAL ON QUESTION OF THIRD PARTY BENEFICIARIES OF WARRANTIES OF QUALITY AND ON NEED FOR PRIVITY OF CONTRACT.  This chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of the goods.  These matters are left to the courts for their determination.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


  Sec. 2.319.  F.O.B. AND F.A.S. TERMS.  (a)  Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which

  (1)  when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this chapter (Section 2.504) and bear the expense and risk of putting them into the possession of the carrier;  or

  (2)  when the term is F.O.B. the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this chapter (Section 2.503);

  (3)  when under either Subdivision (1) or (2) the term is also F.O.B. vessel, car or other vehicle, the seller must in addition at his own expense and risk load the goods on board.  If the term is

F.O.B. vessel the buyer must name the vessel and in an appropriate case the seller must comply with the provisions of this chapter on the form of bill of lading (Section 2.323).

(b)  Unless otherwise agreed the term F.A.S. vessel (which means "free alongside") at a named port, even though used only in connection with the stated price, is a delivery term under which the seller must

(1)  at his own expense and risk deliver the goods alongside the vessel in the manner usual in that port or on a dock designated and provided by the buyer;  and

(2)  obtain and tender a receipt for the goods in exchange for which the carrier is under a duty to issue a bill of lading.

(c)  Unless otherwise agreed in any case falling within Subsection (a)(1) or (3) or Subsection (b) the buyer must seasonably give any needed instructions for making delivery, including when the term is F.A.S. or F.O.B. the loading berth of the vessel and in an appropriate case its name and sailing date.  The seller may treat the failure of needed instructions as a failure of cooperation under this chapter (Section 2.311).  He may also at his option move the goods in any reasonable manner preparatory to delivery or shipment.

(d)  Under the term F.O.B. vessel or F.A.S. unless otherwise agreed the buyer must make payment against tender of the required documents and the seller may not tender nor the buyer demand delivery of the goods in substitution for the documents.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.320.  C.I.F. AND C. & F. TERMS.  (a)  The term C.I.F. means that the price includes in a lump sum the cost of the goods and the insurance and freight to the named destination.  The term C. & F. or C.F. means that the price so includes cost and freight to the named destination.

(b)  Unless otherwise agreed and even though used only in connection with the stated price and destination, the term C.I.F. destination or its equivalent requires the seller at his own expense and risk to

(1)  put the goods into the possession of a carrier at the port for shipment and obtain a negotiable bill or bills of lading covering the entire transportation to the named destination;  and

(2)   load the goods and obtain a receipt from the carrier (which may be contained in the bill of lading) showing that the freight has been paid or provided for;   and

(3)   obtain a policy or certificate of insurance, including any war risk insurance, of a kind and on terms then current at the port of shipment in the usual amount, in the currency of the contract, shown to cover the same goods covered by the bill of lading and providing for payment of loss to the order of the buyer or for the account of whom it may concern;   but the seller may add to the price the amount of the premium for any such war risk insurance;   and

(4)   prepare an invoice of the goods and procure any other documents required to effect shipment or to comply with the contract; and

(5)   forward and tender with commercial promptness all the documents in due form and with any indorsement necessary to perfect the buyer's rights.

(c)   Unless otherwise agreed the term C. & F. or its equivalent has the same effect and imposes upon the seller the same obligations and risks as a C.I.F. term except the obligation as to insurance.

(d)   Under the term C.I.F. or C. & F. unless otherwise agreed the buyer must make payment against tender of the required documents and the seller may not tender nor the buyer demand delivery of the goods in substitution for the documents.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.321.   C.I.F. OR C. & F.:   "NET LANDED WEIGHTS";   "PAYMENT ON ARRIVAL";   WARRANTY OF CONDITION ON ARRIVAL.   Under a contract containing a term C.I.F. or C. & F.

(a)   Where the price is based on or is to be adjusted according to "net landed weights", "delivered weights", "out turn" quantity or quality or the like, unless otherwise agreed the seller must reasonably estimate the price.   The payment due on tender of the documents called for by the contract is the amount so estimated, but after final adjustment of the price a settlement must be made with commercial promptness.

(b)   An agreement described in Subsection (a) or any warranty of quality or condition of the goods on arrival places upon the seller

the risk of ordinary deterioration, shrinkage and the like in transportation but has no effect on the place or time of identification to the contract for sale or delivery or on the passing of the risk of loss.

(c)  Unless otherwise agreed where the contract provides for payment on or after arrival of the goods the seller must before payment allow such preliminary inspection as is feasible;  but if the goods are lost delivery of the documents and payment are due when the goods should have arrived.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.322.  DELIVERY "EX-SHIP".  (a)  Unless otherwise agreed a term for delivery of goods "ex-ship" (which means from the carrying vessel) or in equivalent language is not restricted to a particular ship and requires delivery from a ship which has reached a place at the named port of destination where goods of the kind are usually discharged.

(b)  Under such a term unless otherwise agreed

(1)  the seller must discharge all liens arising out of the carriage and furnish the buyer with a direction which puts the carrier under a duty to deliver the goods;  and

(2)  the risk of loss does not pass to the buyer until the goods leave the ship's tackle or are otherwise properly unloaded.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.323.  FORM OF BILL OF LADING REQUIRED IN OVERSEAS SHIPMENT;  "OVERSEAS".  (a)  Where the contract contemplates overseas shipment and contains a term C.I.F. or C. & F. or F.O.B. vessel, the seller unless otherwise agreed must obtain a negotiable bill of lading stating that the goods have been loaded on board or, in the case of a term C.I.F. or C. & F., received for shipment.

(b)  Where in a case within Subsection (a) a bill of lading has been issued in a set of parts, unless otherwise agreed if the documents are not to be sent from abroad the buyer may demand tender of the full set;  otherwise only one part of the bill of lading need be tendered.  Even if the agreement expressly requires a full set

        (1)  due tender of a single part is acceptable within the provisions of this chapter on cure of improper delivery (Subsection (a) of Section 2.508);  and

        (2)  even though the full set is demanded, if the documents are sent from abroad the person tendering an incomplete set may nevertheless require payment upon furnishing an indemnity which the buyer in good faith deems adequate.

    (c)  A shipment by water or by air or a contract contemplating such shipment is "overseas" insofar as by usage of trade or agreement it is subject to the commercial, financing or shipping practices characteristic of international deep water commerce.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


    Sec. 2.324.  "NO ARRIVAL, NO SALE" TERM.  Under a term "no arrival, no sale" or terms of like meaning, unless otherwise agreed,

        (1)  the seller must properly ship conforming goods and if they arrive by any means he must tender them on arrival but he assumes no obligation that the goods will arrive unless he has caused the non-arrival;  and

        (2)  where without fault of the seller the goods are in part lost or have so deteriorated as no longer to conform to the contract or arrive after the contract time, the buyer may proceed as if there had been casualty to identified goods (Section 2.613).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


    Sec. 2.325.  "LETTER OF CREDIT" TERM; "CONFIRMED CREDIT".  (a) Failure of the buyer seasonably to furnish an agreed letter of credit is a breach of the contract for sale.

    (b)  The delivery to seller of a proper letter of credit suspends the buyer's obligation to pay.  If the letter of credit is dishonored, the seller may on seasonable notification to the buyer require payment directly from him.

    (c)  Unless otherwise agreed the term "letter of credit" or "banker's credit" in a contract for sale means an irrevocable credit issued by a financing agency of good repute and, where the shipment is overseas, of good international repute.  The term "confirmed credit"

means that the credit must also carry the direct obligation of such an agency which does business in the seller's financial market.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


      Sec. 2.326.  SALE ON APPROVAL AND SALE OR RETURN;  RIGHTS OF CREDITORS.  (a)  Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is
      (1)  a "sale on approval" if the goods are delivered primarily for use, and
      (2)  a "sale or return" if the goods are delivered primarily for resale.
      (b)  Goods held on approval are not subject to the claims of the buyer's creditors until acceptance;  goods held on sale or return are subject to such claims while in the buyer's possession.
      (c)  Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this chapter (Section 2.201) and as contradicting the sale aspect of the contract within the provisions of this chapter on parol or extrinsic evidence (Section 2.202).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1977, 65th Leg., p. 1530, ch. 623, Sec. 4, eff. Aug. 29, 1977;  Acts 1999, 76th Leg., ch. 414, Sec. 2.16, eff. July 1, 2001.


      Sec. 2.327.  SPECIAL INCIDENTS OF SALE ON APPROVAL AND SALE OR RETURN.  (a)  Under a sale on approval unless otherwise agreed
      (1)  although the goods are identified to the contract the risk of loss and the title do not pass to the buyer until acceptance; and
      (2)  use of the goods consistent with the purpose of trial is not acceptance but failure seasonably to notify the seller of election to return the goods is acceptance, and if the goods conform to the contract acceptance of any part is acceptance of the whole;  and
      (3)  after due notification of election to return, the return is at the seller's risk and expense but a merchant buyer must follow

any reasonable instructions.

(b)  Under a sale or return unless otherwise agreed

(1)  the option to return extends to the whole or any commercial unit of the goods while in substantially their original condition, but must be exercised seasonably;  and

(2)  the return is at the buyer's risk and expense.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.328.  SALE BY AUCTION.  (a)  In a sale by auction if goods are put up in lots each lot is the subject of a separate sale.

(b)  A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. Where a bid is made while the hammer is falling in acceptance of a prior bid the auctioneer may in his discretion reopen the bidding or declare the goods sold under the bid on which the hammer was falling.

(c)  Such a sale is with reserve unless the goods are in explicit terms put up without reserve.  In an auction with reserve the auctioneer may withdraw the goods at any time until he announces completion of the sale.  In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time. In either case a bidder may retract his bid until the auctioneer's announcement of completion of the sale, but a bidder's retraction does not revive any previous bid.

(d)  If the auctioneer knowingly receives a bid on the seller's behalf or the seller makes or procures such a bid, and notice has not been given that liberty for such bidding is reserved, the buyer may at his option avoid the sale or take the goods at the price of the last good faith bid prior to the completion of the sale.  This subsection shall not apply to any bid at a forced sale.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


SUBCHAPTER D. TITLE, CREDITORS AND GOOD FAITH PURCHASERS

Sec. 2.401.  PASSING OF TITLE;  RESERVATION FOR SECURITY; LIMITED APPLICATION OF THIS SECTION.  Each provision of this chapter

with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title.  Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:

(a)  Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2.501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title.  Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.  Subject to these provisions and to the provisions of the chapter on Secured Transactions (Chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(b)  Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place;  and in particular and despite any reservation of a security interest by the bill of lading

(1)  if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment;  but

(2)  if the contract requires delivery at destination, title passes on tender there.

(c)  Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

(1)  if the seller is to deliver a tangible document of title, title passes at the time when and the place where he delivers such documents and if the seller is to deliver an electronic document of title, title passes when the seller delivers the document; or

(2)  if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

(d)  A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller.  Such revesting occurs by operation of law and is not a "sale".

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by:

     Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 6, eff. September 1, 2005.


     Sec. 2.402.  RIGHTS OF SELLER'S CREDITORS AGAINST SOLD GOODS. (a)  Except as provided in Subsections (b) and (c), rights of unsecured creditors of the seller with respect to goods which have been identified to a contract for sale are subject to the buyer's rights to recover the goods under this chapter (Sections 2.502 and 2.716).

     (b)  A creditor of the seller may treat a sale or an identification of goods to a contract for sale as void if as against him a retention of possession by the seller is fraudulent under any rule of law of the state where the goods are situated, except that retention of possession in good faith and current course of trade by a merchant-seller for a commercially reasonable time after a sale or identification is not fraudulent.

     (c)  Nothing in this chapter shall be deemed to impair the rights of creditors of the seller

          (1)  under the provisions of the chapter on Secured Transactions (Chapter 9);  or

          (2)  where identification to the contract or delivery is made not in current course of trade but in satisfaction of or as security for a pre-existing claim for money, security or the like and is made under circumstances which under any rule of law of the state where the goods are situated would apart from this chapter constitute the transaction a fraudulent transfer or voidable preference.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.403.  POWER TO TRANSFER;  GOOD FAITH PURCHASE OF GOODS; "ENTRUSTING".  (a)  A purchaser of goods acquires all title which his

transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased.  A person with voidable title has power to transfer a good title to a good faith purchaser for value.  When goods have been delivered under a transaction of purchase the purchaser has such power even though

(1)  the transferor was deceived as to the identity of the purchaser, or

(2)  the delivery was in exchange for a check which is later dishonored, or

(3)  it was agreed that the transaction was to be a "cash sale", or

(4)  the delivery was procured through fraud punishable as larcenous under the criminal law.

(b)  Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(c)  "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

(d)  The rights of other purchasers of goods and of lien creditors are governed by the chapters on Secured Transactions (Chapter 9) and Documents of Title (Chapter 7).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1993, 73rd Leg., ch. 570, Sec. 3, eff. Sept. 1, 1993.


SUBCHAPTER E.  PERFORMANCE

Sec. 2.501.  INSURABLE INTEREST IN GOODS;  MANNER OF IDENTIFICATION OF GOODS.  (a)  The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them.  Such identification can be made at any time and in any manner explicitly agreed to by the parties.  In the absence of explicit

agreement identification occurs

(1)   when the contract is made if it is for the sale of goods already existing and identified;

(2)   if the contract is for the sale of future goods other than those described in Subdivision (3), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;

(3)   when the crops are planted or otherwise become growing crops or the young are conceived if the contract is for the sale of unborn young to be born within twelve months after contracting or for the sale of crops to be harvested within twelve months or the next normal harvest season after contracting whichever is longer.

(b)   The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him and where the identification is by the seller alone he may until default or insolvency or notification to the buyer that the identification is final substitute other goods for those identified.

(c)   Nothing in this section impairs any insurable interest recognized under any other statute or rule of law.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.502.   BUYER'S RIGHT TO GOODS ON SELLER'S REPUDIATION, FAILURE TO DELIVER, OR INSOLVENCY.   (a)   Subject to Subsections (b) and (c) and even though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of the immediately preceding section may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if:

(1)   in the case of goods bought for personal, family, or household purposes, the seller repudiates or fails to deliver as required by the contract;  or

(2)   in all cases, the seller becomes insolvent within ten days after receipt of the first installment on their price.

(b)   The buyer's right to recover the goods under Subsection (a) (1) vests upon acquisition of a special property, even if the seller had not then repudiated or failed to deliver.

(c)   If the identification creating his special property has been

made by the buyer he acquires the right to recover the goods only if they conform to the contract for sale.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1999, 76th Leg., ch. 414, Sec. 2.17, eff. July 1, 2001.


Sec. 2.503.  MANNER OF SELLER'S TENDER OF DELIVERY.  (a)  Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery.  The manner, time and place for tender are determined by the agreement and this chapter, and in particular

(1)  tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession;  but

(2)  unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods.

(b)  Where the case is within the next section respecting shipment tender requires that the seller comply with its provisions.

(c)  Where the seller is required to deliver at a particular destination tender requires that he comply with Subsection (a) and also in any appropriate case tender documents as described in Subsections (d) and (e) of this section.

(d)  Where goods are in the possession of a bailee and are to be delivered without being moved

(1)  tender requires that the seller either tender a negotiable document of title covering such goods or procure acknowledgment by the bailee of the buyer's right to possession of the goods;  but

(2)  tender to the buyer of a non-negotiable document of title or of a written direction to the bailee to deliver is sufficient tender unless the buyer seasonably objects, and receipt by the bailee of notification of the buyer's rights fixes those rights as against the bailee and all third persons;  but risk of loss of the goods and of any failure by the bailee to honor the non-negotiable document of title or to obey the direction remains on the seller until the buyer has had a reasonable time to present the document or direction, and a

refusal by the bailee to honor the document or to obey the direction defeats the tender.

(e)  Where the contract requires the seller to deliver documents

(1)  he must tender all such documents in correct form, except as provided in this chapter with respect to bills of lading in a set (Subsection (b) of Section 2.323); and

(2)  tender through customary banking channels is sufficient and dishonor of a draft accompanying or associated with the documents constitutes non-acceptance or rejection.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1983, 68th Leg., p. 1530, ch. 290, Sec. 1, eff. Aug. 29, 1983.
Amended by:
     Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 7, eff. September 1, 2005.


Sec. 2.504.  SHIPMENT BY SELLER.  Where the seller is required or authorized to send the goods to the buyer and the contract does not require him to deliver them at a particular destination, then unless otherwise agreed he must

(1)  put the goods in the possession of such a carrier and make such a contract for their transportation as may be reasonable having regard to the nature of the goods and other circumstances of the case;  and

(2)  obtain and promptly deliver or tender in due form any document necessary to enable the buyer to obtain possession of the goods or otherwise required by the agreement or by usage of trade; and

(3)  promptly notify the buyer of the shipment.
     Failure to notify the buyer under Subdivision (3) or to make a proper contract under Subdivision (1) is a ground for rejection only if material delay or loss ensues.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.505.  SELLER'S SHIPMENT UNDER RESERVATION.  (a)  Where the seller has identified goods to the contract by or before shipment:

(1)  his procurement of a negotiable bill of lading to his own order or otherwise reserves in him a security interest in the goods.  His procurement of the bill to the order of a financing agency or of the buyer indicates in addition only the seller's expectation of transferring that interest to the person named.

(2)  a non-negotiable bill of lading to himself or his nominee reserves possession of the goods as security but except in a case of conditional delivery (Subsection (b) of Section 2.507) a non-negotiable bill of lading naming the buyer as consignee reserves no security interest even though the seller retains possession or control of the bill of lading.

(b)  When shipment by the seller with reservation of a security interest is in violation of the contract for sale it constitutes an improper contract for transportation within the preceding section but impairs neither the rights given to the buyer by shipment and identification of the goods to the contract nor the seller's powers as a holder of a negotiable document of title.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.
Amended by:
     Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 8, eff. September 1, 2005.


Sec. 2.506.  RIGHTS OF FINANCING AGENCY.  (a)  A financing agency by paying or purchasing for value a draft which relates to a shipment of goods acquires to the extent of the payment or purchase and in addition to its own rights under the draft and any document of title securing it any rights of the shipper in the goods including the right to stop delivery and the shipper's right to have the draft honored by the buyer.

(b)  The right to reimbursement of a financing agency which has in good faith honored or purchased the draft under commitment to or authority from the buyer is not impaired by subsequent discovery of defects with reference to any relevant document which was apparently regular.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.
Amended by:

Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 9, eff. September 1, 2005.

Sec. 2.507.  EFFECT OF SELLER'S TENDER;  DELIVERY ON CONDITION. (a)  Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract.

(b)  Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.508.  CURE BY SELLER OF IMPROPER TENDER OR DELIVERY; REPLACEMENT.  (a)  Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(b)  Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.509.  RISK OF LOSS IN THE ABSENCE OF BREACH.  (a)  Where the contract requires or authorizes the seller to ship the goods by carrier

(1)  if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation (Section 2.505);  but

(2)  if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the

possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.

(b)  Where the goods are held by a bailee to be delivered without being moved, the risk of loss passes to the buyer

(1)  on the buyer's receipt of possession or control of a negotiable document of title covering the goods; or

(2)  on acknowledgment by the bailee of the buyer's right to possession of the goods; or

(3)  after the buyer's receipt of possession or control of a non-negotiable document of title or other written direction to deliver, as provided in Subsection (d)(2) of Section 2.503.

(c)  In any case not within Subsection (a) or (b), the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant;  otherwise the risk passes to the buyer on tender of delivery.

(d)  The provisions of this section are subject to contrary agreement of the parties and to the provisions of this chapter on sale on approval (Section 2.327) and on effect of breach on risk of loss (Section 2.510).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1983, 68th Leg., p. 1531, ch. 290, Sec. 2, eff. Aug. 29, 1983.
Amended by:
    Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 10, eff. September 1, 2005.


Sec. 2.510.  EFFECT OF BREACH ON RISK OF LOSS.  (a)  Where a tender or delivery of goods so fails to conform to the contract as to give a right of rejection the risk of their loss remains on the seller until cure or acceptance.

(b)  Where the buyer rightfully revokes acceptance he may to the extent of any deficiency in his effective insurance coverage treat the risk of loss as having rested on the seller from the beginning.

(c)  Where the buyer as to conforming goods already identified to the contract for sale repudiates or is otherwise in breach before risk of their loss has passed to him, the seller may to the extent of any

deficiency in his effective insurance coverage treat the risk of loss as resting on the buyer for a commercially reasonable time.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.511.   TENDER OF PAYMENT BY BUYER;   PAYMENT BY CHECK.   (a) Unless otherwise agreed tender of payment is a condition to the seller's duty to tender and complete any delivery.

(b)   Tender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender and gives any extension of time reasonably necessary to procure it.

(c)   Subject to the provisions of this title on the effect of an instrument on an obligation (Section 3.802), payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.512.   PAYMENT BY BUYER BEFORE INSPECTION.   (a)   Where the contract requires payment before inspection non-conformity of the goods does not excuse the buyer from so making payment unless

(1)   the non-conformity appears without inspection;   or

(2)   despite tender of the required documents circumstances would justify injunction against honor under this title (Section 5.109(b)).

(b)   Payment pursuant to Subsection (a) does not constitute an acceptance of goods or impair the buyer's right to inspect or any of his remedies.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1999, 76th Leg., ch. 4, Sec. 3, eff. Sept. 1, 1999.


Sec. 2.513.   BUYER'S RIGHT TO INSPECTION OF GOODS.   (a)   Unless otherwise agreed and subject to Subsection (c), where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner.   When the

seller is required or authorized to send the goods to the buyer, the inspection may be after their arrival.

(b)  Expenses of inspection must be borne by the buyer but may be recovered from the seller if the goods do not conform and are rejected.

(c)  Unless otherwise agreed and subject to the provisions of this chapter on C.I.F. contracts (Subsection (c) of Section 2.321), the buyer is not entitled to inspect the goods before payment of the price when the contract provides

(1)  for delivery "C.O.D." or on other like terms;  or

(2)  for payment against documents of title, except where such payment is due only after the goods are to become available for inspection.

(d)  A place or method of inspection fixed by the parties is presumed to be exclusive but unless otherwise expressly agreed it does not postpone identification or shift the place for delivery or for passing the risk of loss.  If compliance becomes impossible, inspection shall be as provided in this section unless the place or method fixed was clearly intended as an indispensable condition failure of which avoids the contract.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.514.  WHEN DOCUMENTS DELIVERABLE ON ACCEPTANCE;  WHEN ON PAYMENT.  Unless otherwise agreed documents against which a draft is drawn are to be delivered to the drawee on acceptance of the draft if it is payable more than three days after presentment;  otherwise, only on payment.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.515.  PRESERVING EVIDENCE OF GOODS IN DISPUTE.  In furtherance of the adjustment of any claim or dispute

(1)  either party on reasonable notification to the other and for the purpose of ascertaining the facts and preserving evidence has the right to inspect, test and sample the goods including such of them as may be in the possession or control of the other;  and

(2)  the parties may agree to a third party inspection or

survey to determine the conformity or condition of the goods and may agree that the findings shall be binding upon them in any subsequent litigation or adjustment.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


SUBCHAPTER F. BREACH, REPUDIATION AND EXCUSE

Sec. 2.601. BUYER'S RIGHTS ON IMPROPER DELIVERY. Subject to the provisions of this chapter on breach in installment contracts (Section 2.612) and unless otherwise agreed under the sections on contractual limitations of remedy (Sections 2.718 and 2.719), if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may

(1)  reject the whole;  or

(2)  accept the whole;  or

(3)  accept any commercial unit or units and reject the rest.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.602. MANNER AND EFFECT OF RIGHTFUL REJECTION. (a) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(b)  Subject to the provisions of the two following sections on rejected goods (Sections 2.603 and 2.604),

(1)  after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(2)  if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this chapter (Subsection (c) of Section 2.711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them;  but

(3)  the buyer has no further obligations with regard to goods rightfully rejected.

(c)  The seller's rights with respect to goods wrongfully

rejected are governed by the provisions of this chapter on Seller's remedies in general (Section 2.703).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.603.  MERCHANT BUYER'S DUTIES AS TO RIGHTFULLY REJECTED GOODS.  (a)  Subject to any security interest in the buyer (Subsection (c) of Section 2.711), when the seller has no agent or place of business at the market of rejection a merchant buyer is under a duty after rejection of goods in his possession or control to follow any reasonable instructions received from the seller with respect to the goods and in the absence of such instructions to make reasonable efforts to sell them for the seller's account if they are perishable or threaten to decline in value speedily.  Instructions are not reasonable if on demand indemnity for expenses is not forthcoming.

(b)  When the buyer sells goods under Subsection (a), he is entitled to reimbursement from the seller or out of the proceeds for reasonable expenses of caring for and selling them, and if the expenses include no selling commission then to such commission as is usual in the trade or if there is none to a reasonable sum not exceeding ten per cent on the gross proceeds.

(c)  In complying with this section the buyer is held only to good faith and good faith conduct hereunder is neither acceptance nor conversion nor the basis of an action for damages.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.604.  BUYER'S OPTIONS AS TO SALVAGE OF RIGHTFULLY REJECTED GOODS.  Subject to the provisions of the immediately preceding section on perishables if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account with reimbursement as provided in the preceding section.  Such action is not acceptance or conversion.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.605.  WAIVER OF BUYER'S OBJECTIONS BY FAILURE TO

PARTICULARIZE.  (a)  The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach

         (1)  where the seller could have cured it if stated seasonably;  or

         (2)  between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.

     (b)  Payment against documents made without reservation of rights precludes recovery of the payment for defects apparent in the documents.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by:

     Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 11, eff. September 1, 2005.


     Sec. 2.606.  WHAT CONSTITUTES ACCEPTANCE OF GOODS.  (a) Acceptance of goods occurs when the buyer

         (1)  after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity;  or

         (2)  fails to make an effective rejection (Subsection (a) of Section 2.602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them;  or

         (3)  does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

     (b)  Acceptance of a part of any commercial unit is acceptance of that entire unit.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.607.  EFFECT OF ACCEPTANCE;  NOTICE OF BREACH;  BURDEN OF ESTABLISHING BREACH AFTER ACCEPTANCE;  NOTICE OF CLAIM OR LITIGATION TO PERSON ANSWERABLE OVER.  (a)  The buyer must pay at the contract rate for any goods accepted.

(b)  Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a non-conformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this chapter for non-conformity.

(c)  Where a tender has been accepted

(1)  the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;  and

(2)  if the claim is one for infringement or the like (Subsection (c) of Section 2.312) and the buyer is sued as a result of such a breach he must so notify the seller within a reasonable time after he receives notice of the litigation or be barred from any remedy over for liability established by the litigation.

(d)  The burden is on the buyer to establish any breach with respect to the goods accepted.

(e)  Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over

(1)  he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.

(2)  if the claim is one for infringement or the like (Subsection (c) of Section 2.312) the original seller may demand in writing that his buyer turn over to him control of the litigation including settlement or else be barred from any remedy over and if he also agrees to bear all expense and to satisfy any adverse judgment, then unless the buyer after seasonable receipt of the demand does turn over control the buyer is so barred.

(f)  The provisions of Subsections (c), (d) and (e) apply to any obligation of a buyer to hold the seller harmless against infringement or the like (Subsection (c) of Section 2.312).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.608. REVOCATION OF ACCEPTANCE IN WHOLE OR IN PART. (a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.609. RIGHT TO ADEQUATE ASSURANCE OF PERFORMANCE. (a) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

(b) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

(c) Acceptance of any improper delivery or payment does not prejudice the aggrieved party's right to demand adequate assurance of future performance.

(d) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.610.  ANTICIPATORY REPUDIATION.  When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

(1)  for a commercially reasonable time await performance by the repudiating party;  or

(2)  resort to any remedy for breach (Section 2.703 or Section 2.711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction;  and

(3)  in either case suspend his own performance or proceed in accordance with the provisions of this chapter on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (Section 2.704).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.611.  RETRACTION OF ANTICIPATORY REPUDIATION.  (a)  Until the repudiating party's next performance is due he can retract his repudiation unless the aggrieved party has since the repudiation cancelled or materially changed his position or otherwise indicated that he considers the repudiation final.

(b)  Retraction may be by any method which clearly indicates to the aggrieved party that the repudiating party intends to perform, but must include any assurance justifiably demanded under the provisions of this chapter (Section 2.609).

(c)  Retraction reinstates the repudiating party's rights under the contract with due excuse and allowance to the aggrieved party for any delay occasioned by the repudiation.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.612.  "INSTALLMENT CONTRACT";  BREACH.  (a)  An "installment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent.

(b)  The buyer may reject any installment which is non-conforming if the non-conformity substantially impairs the value of that installment and cannot be cured or if the non-conformity is a defect in the required documents;  but if the non-conformity does not fall within Subsection (c) and the seller gives adequate assurance of its cure the buyer must accept that installment.

(c)  Whenever non-conformity or default with respect to one or more installments substantially impairs the value of the whole contract there is a breach of the whole.  But the aggrieved party reinstates the contract if he accepts a non-conforming installment without seasonally notifying of cancellation or if he brings an action with respect only to past installments or demands performance as to future installments.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.613.  CASUALTY TO IDENTIFIED GOODS.  Where the contract requires for its performance goods identified when the contract is made, and the goods suffer casualty without fault of either party before the risk of loss passes to the buyer, or in a proper case under a "no arrival, no sale" term (Section 2.324) then

(1)  if the loss is total the contract is avoided;  and

(2)  if the loss is partial or the goods have so deteriorated as no longer to conform to the contract the buyer may nevertheless demand inspection and at his option either treat the contract as avoided or accept the goods with due allowance from the contract price for the deterioration or the deficiency in quantity but without further right against the seller.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.614.  SUBSTITUTED PERFORMANCE.  (a)  Where without fault of either party the agreed berthing, loading, or unloading facilities fail or an agreed type of carrier becomes unavailable or the agreed manner of delivery otherwise becomes commercially impracticable but a commercially reasonable substitute is available, such substitute performance must be tendered and accepted.

(b)  If the agreed means or manner of payment fails because of

domestic or foreign governmental regulation, the seller may withhold or stop delivery unless the buyer provides a means or manner of payment which is commercially a substantial equivalent.  If delivery has already been taken, payment by the means or in the manner provided by the regulation discharges the buyer's obligation unless the regulation is discriminatory, oppressive or predatory.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.615.  EXCUSE BY FAILURE OF PRESUPPOSED CONDITIONS.  Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

          (1)  Delay in delivery or non-delivery in whole or in part by a seller who complies with Subdivisions (2) and (3) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

          (2)  Where the causes mentioned in Subdivision (1) affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture.  He may so allocate in any manner which is fair and reasonable.

          (3)  The seller must notify the buyer seasonably that there will be delay or non-delivery and, when allocation is required under Subdivision (2), of the estimated quota thus made available for the buyer.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.616.  PROCEDURE ON NOTICE CLAIMING EXCUSE.  (a)  Where the buyer receives notification of a material or indefinite delay or an allocation justified under the preceding section he may by written notification to the seller as to any delivery concerned, and where the prospective deficiency substantially impairs the value of the whole

contract under the provisions of this chapter relating to breach of installment contracts (Section 2.612), then also as to the whole,

(1)  terminate and thereby discharge any unexecuted portion of the contract;  or

(2)  modify the contract by agreeing to take his available quota in substitution.

(b)  If after receipt of such notification from the seller the buyer fails so to modify the contract within a reasonable time not exceeding thirty days the contract lapses with respect to any deliveries affected.

(c)  The provisions of this section may not be negated by agreement except insofar as the seller has assumed a greater obligation under the preceding section.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


SUBCHAPTER G.  REMEDIES

Sec. 2.701.  REMEDIES FOR BREACH OF COLLATERAL CONTRACTS NOT IMPAIRED.  Remedies for breach of any obligation or promise collateral or ancillary to a contract for sale are not impaired by the provisions of this chapter.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.702.  SELLER'S REMEDIES ON DISCOVERY OF BUYER'S INSOLVENCY.  (a)  Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this chapter (Section 2.705).

(b)  Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(c)  The seller's right to reclaim under Subsection (b) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this chapter (Section 2.403). Successful reclamation of goods excludes all other remedies with respect to them.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.703.  SELLER'S REMEDIES IN GENERAL.  Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2.612), then also with respect to the whole undelivered balance, the aggrieved seller may
          (1)  withhold delivery of such goods;
          (2)  stop delivery by any bailee as hereafter provided (Section 2.705);
          (3)  proceed under the next section respecting goods still unidentified to the contract;
          (4)  resell and recover damages as hereafter provided (Section 2.706);
          (5)  recover damages for non-acceptance (Section 2.708) or in a proper case the price (Section 2.709);
          (6)  cancel.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.704.  SELLER'S RIGHT TO IDENTIFY GOODS TO THE CONTRACT NOTWITHSTANDING BREACH OR TO SALVAGE UNFINISHED GOODS.  (a)  An aggrieved seller under the preceding section may
          (1)  identify to the contract conforming goods not already identified if at the time he learned of the breach they are in his possession or control;
          (2)  treat as the subject of resale goods which have demonstrably been intended for the particular contract even though those goods are unfinished.
     (b)  Where the goods are unfinished an aggrieved seller may in the exercise of reasonable commercial judgment for the purposes of

avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or cease manufacture and resell for scrap or salvage value or proceed in any other reasonable manner.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.705.  SELLER'S STOPPAGE OF DELIVERY IN TRANSIT OR OTHERWISE.  (a)  The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (Section 2.702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.

(b)  As against such buyer the seller may stop delivery until

(1)  receipt of the goods by the buyer; or

(2)  acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or

(3)  such acknowledgment to the buyer by a carrier by reshipment or as a warehouse; or

(4)  negotiation to the buyer of any negotiable document of title covering the goods.

(c)(1)  To stop delivery the seller must so notify as to enable the bailee by reasonable diligence to prevent delivery of the goods.

(2)  After such notification the bailee must hold and deliver the goods according to the directions of the seller but the seller is liable to the bailee for any ensuing charges or damages.

(3)  If a negotiable document of title has been issued for goods the bailee is not obliged to obey a notification to stop until surrender of possession or control of the document.

(4)  A carrier who has issued a non-negotiable bill of lading is not obliged to obey a notification to stop received from a person other than the consignor.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.
Amended by:
Acts 2005, 79th Leg., Ch. 122 (S.B. 1593), Sec. 12, eff.

September 1, 2005.


     Sec. 2.706.  SELLER'S RESALE INCLUDING CONTRACT FOR RESALE.  (a)
Under the conditions stated in Section 2.703 on seller's remedies, the
seller may resell the goods concerned or the undelivered balance
thereof.  Where the resale is made in good faith and in a commercially
reasonable manner the seller may recover the difference between the
resale price and the contract price together with any incidental
damages allowed under the provisions of this chapter (Section 2.710),
but less expenses saved in consequence of the buyer's breach.

     (b)  Except as otherwise provided in Subsection (c) or unless
otherwise agreed resale may be at public or private sale including
sale by way of one or more contracts to sell or of identification to
an existing contract of the seller.  Sale may be as a unit or in
parcels and at any time and place and on any terms but every aspect of
the sale including the method, manner, time, place and terms must be
commercially reasonable.  The resale must be reasonably identified as
referring to the broken contract, but it is not necessary that the
goods be in existence or that any or all of them have been identified
to the contract before the breach.

     (c)  Where the resale is at private sale the seller must give the
buyer reasonable notification of his intention to resell.

     (d)  Where the resale is at public sale

          (1)  only identified goods can be sold except where there is
a recognized market for a public sale of futures in goods of the kind;
and

          (2)  it must be made at a usual place or market for public
sale if one is reasonably available and except in the case of goods
which are perishable or threaten to decline in value speedily the
seller must give the buyer reasonable notice of the time and place of
the resale;  and

          (3)  if the goods are not to be within the view of those
attending the sale the notification of sale must state the place where
the goods are located and provide for their reasonable inspection by
prospective bidders;  and

          (4)  the seller may buy.

     (e)  A purchaser who buys in good faith at a resale takes the

goods free of any rights of the original buyer even though the seller fails to comply with one or more of the requirements of this section.

(f)  The seller is not accountable to the buyer for any profit made on any resale.  A person in the position of a seller (Section 2.707) or a buyer who has rightfully rejected or justifiably revoked acceptance must account for any excess over the amount of his security interest, as hereinafter defined (Subsection (c) of Section 2.711).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.707.  "PERSON IN THE POSITION OF A SELLER".  (a)  A "person in the position of a seller" includes as against a principal an agent who has paid or become responsible for the price of goods on behalf of his principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller.

(b)  A person in the position of a seller may as provided in this chapter withhold or stop delivery (Section 2.705) and resell (Section 2.706) and recover incidental damages (Section 2.710).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.708.  SELLER'S DAMAGES FOR NON-ACCEPTANCE OR REPUDIATION. (a)  Subject to Subsection (b) and to the provisions of this chapter with respect to proof of market price (Section 2.723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (Section 2.710), but less expenses saved in consequence of the buyer's breach.

(b)  If the measure of damages provided in Subsection (a) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter (Section 2.710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.709.  ACTION FOR THE PRICE.  (a)  When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price

(1)  of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer;  and

(2)  of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

(b)  Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment.  The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.

(c)  After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (Section 2.610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for nonacceptance under the preceding section.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.710.  SELLER'S INCIDENTAL DAMAGES.  Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.711.  BUYER'S REMEDIES IN GENERAL;  BUYER'S SECURITY INTEREST IN REJECTED GOODS.  (a)  Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with

respect to the whole if the breach goes to the whole contract (Section 2.612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

(1)  "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract;  or

(2)  recover damages for non-delivery as provided in this chapter (Section 2.713).

(b)  Where the seller fails to deliver or repudiates the buyer may also

(1)  if the goods have been identified recover them as provided in this chapter (Section 2.502);  or

(2)  in a proper case obtain specific performance or replevy the goods as provided in this chapter (Section 2.716).

(c)  On rightful rejection or justifiable revocation of acceptance a buyer has a security interest in goods in his possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody and may hold such goods and resell them in like manner as an aggrieved seller (Section 2.706).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.712.  "COVER";  BUYER'S PROCUREMENT OF SUBSTITUTE GOODS. (a)  After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(b)  The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Section 2.715), but less expenses saved in consequence of the seller's breach.

(c)  Failure of the buyer to effect cover within this section does not bar him from any other remedy.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.

Sec. 2.713.  BUYER'S DAMAGES FOR NON-DELIVERY OR REPUDIATION. (a)  Subject to the provisions of this chapter with respect to proof of market price (Section 2.723), the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (Section 2.715), but less expenses saved in consequence of the seller's breach.

(b)  Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.714.  BUYER'S DAMAGES FOR BREACH IN REGARD TO ACCEPTED GOODS.  (a)  Where the buyer has accepted goods and given notification (Subsection (c) of Section 2.607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(b)  The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(c)  In a proper case any incidental and consequential damages under the next section may also be recovered.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.715.  BUYER'S INCIDENTAL AND CONSEQUENTIAL DAMAGES.  (a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(b)  Consequential damages resulting from the seller's breach

include

     (1)  any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise;  and

     (2)  injury to person or property proximately resulting from any breach of warranty.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


    Sec. 2.716.  BUYER'S RIGHT TO SPECIFIC PERFORMANCE OR REPLEVIN. (a)  Specific performance may be decreed where the goods are unique or in other proper circumstances.

    (b)  The decree for specific performance may include such terms and conditions as to payment of the price, damages, or other relief as the court may deem just.

    (c)  The buyer has a right of replevin for goods identified to the contract if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered.  In the case of goods bought for personal, family, or household purposes, the buyer's right of replevin vests upon acquisition of a special property, even if the seller had not then repudiated or failed to deliver.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967. Amended by Acts 1999, 76th Leg., ch. 414, Sec. 2.18, eff. July 1, 2001.


    Sec. 2.717.  DEDUCTION OF DAMAGES FROM THE PRICE.  The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


    Sec. 2.718.  LIQUIDATION OR LIMITATION OF DAMAGES;  DEPOSITS.

(a)  Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy.  A term fixing unreasonably large liquidated damages is void as a penalty.

(b)  Where the seller justifiably withholds delivery of goods because of the buyer's breach, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds

(1)  the amount to which the seller is entitled by virtue of terms liquidating the seller's damages in accordance with Subsection (a), or

(2)  in the absence of such terms, twenty percent of the value of the total performance for which the buyer is obligated under the contract or $500, whichever is smaller.

(c)  The buyer's right to restitution under Subsection (b) is subject to offset to the extent that the seller establishes

(1)  a right to recover damages under the provisions of this chapter other than Subsection (a), and

(2)  the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract.

(d)  Where a seller has received payment in goods their reasonable value or the proceeds of their resale shall be treated as payments for the purposes of Subsection (b);  but if the seller has notice of the buyer's breach before reselling goods received in part performance, his resale is subject to the conditions laid down in this chapter on resale by an aggrieved seller (Section 2.706).

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.719.  CONTRACTUAL MODIFICATION OR LIMITATION OF REMEDY. (a)  Subject to the provisions of Subsections (b) and (c) of this section and of the preceding section on liquidation and limitation of damages,

(1)  the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of

the price or to repair and replacement of non-conforming goods or parts;  and

       (2)  resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

     (b)  Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

     (c)  Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.720.  EFFECT OF "CANCELLATION" OR "RESCISSION" ON CLAIMS FOR ANTECEDENT BREACH.  Unless the contrary intention clearly appears, expressions of "cancellation" or "rescission" of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.721.  REMEDIES FOR FRAUD.  Remedies for material misrepresentation or fraud include all remedies available under this chapter for non-fraudulent breach.  Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


     Sec. 2.722.  WHO CAN SUE THIRD PARTIES FOR INJURY TO GOODS. Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract

       (1)  a right of action against the third party is in either

party to the contract for sale who has title to or a security interest or a special property or an insurable interest in the goods;  and if the goods have been destroyed or converted a right of action is also in the party who either bore the risk of loss under the contract for sale or has since the injury assumed that risk as against the other;

      (2)  if at the time of the injury the party plaintiff did not bear the risk of loss as against the other party to the contract for sale and there is no arrangement between them for disposition of the recovery, his suit or settlement is, subject to his own interest, as a fiduciary for the other party to the contract;

      (3)  either party may with the consent of the other sue for the benefit of whom it may concern.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


    Sec. 2.723.  PROOF OF MARKET PRICE:  TIME AND PLACE.  (a)  If an action based on anticipatory repudiation comes to trial before the time for performance with respect to some or all of the goods, any damages based on market price (Section 2.708 or Section 2.713) shall be determined according to the price of such goods prevailing at the time when the aggrieved party learned of the repudiation.

    (b)  If evidence of a price prevailing at the times or places described in this chapter is not readily available the price prevailing within any reasonable time before or after the time described or at any other place which in commercial judgment or under usage of trade would serve as a reasonable substitute for the one described may be used, making any proper allowance for the cost of transporting the goods to or from such other place.

    (c)  Evidence of a relevant price prevailing at a time or place other than the one described in this chapter offered by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


    Sec. 2.724.  ADMISSIBILITY OF MARKET QUOTATIONS.  Whenever the prevailing price or value of any goods regularly bought and sold in any established commodity market is in issue, reports in official

publications or trade journals or in newspapers or periodicals of general circulation published as the reports of such market shall be admissible in evidence. The circumstances of the preparation of such a report may be shown to affect its weight but not its admissibility.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.


Sec. 2.725. STATUTE OF LIMITATIONS IN CONTRACTS FOR SALE. (a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(c) Where an action commenced within the time limited by Subsection (a) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

(d) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this title becomes effective.

Acts 1967, 60th Leg., p. 2343, ch. 785, Sec. 1, eff. Sept. 1, 1967.